## SIMMONS *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 1296. Argued December 11, 1891. — Decided December 21, 1891.

When it is made to appear to the court during the trial of a criminal case that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused, the jury may be discharged, and the defendant put on trial by another jury; and the defendant is not thereby twice put in jeopardy, within the meaning of the Fifth Amendment to the Constitution of the United States.

The judge presiding at a trial, civil or criminal, in any court of the United States, may express his opinion to the jury upon the questions of fact which he submits to their determination.

THIS was an indictment on section 5209 of the Revised Statutes for aiding and abetting one Claassen in embezzling and misapplying the funds of a certain national bank in the city of New York. The defendant pleaded not guilty.

On January 26, 1891, the case came on for trial upon the issue thus joined; a jury was empanelled and sworn; Goodnow, one of the jurors, stated on his *voir dire* that he had no acquaintance with the defendant and had never seen him to

his knowledge; the case was opened to the jury; and on that and following days witnesses were examined on behalf of the United States.

Before the coming in of the court on Friday, February 6, the district attorney received, and exhibited to the defendant's counsel, and to the judge, an affidavit of one Ward to the effect that during four months in 1884 the juror Goodnow and the defendant occupied adjoining rooms in a building in the city of New York, and were often seen conversing together in the halls of that building. The court thereupon adjourned the trial until Monday, February 9.

In the afternoon of February 6, the district attorney received from the defendant's counsel a letter, commenting upon the statements in Ward's affidavit and denying their truth, asserting that Ward had had a quarrel of long standing with the defendant, and stating that he had sent a copy of the letter to the daily papers; and the substance of this letter was published in the morning papers of February 7.

On the coming in of the court on February 9, the district attorney read affidavits to the foregoing facts, together with Ward's affidavit, the letter of the defendant's counsel and the publication in the newspapers; and thereupon moved the court " to withdraw a juror, for the reason that, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."

In opposing this motion, the defendant's counsel admitted the making of Ward's affidavit, its communication to the counsel on both sides and to the court, and the writing and publication of the letter; but submitted an affidavit of the defendant denying that he had ever known Goodnow or had ever to his knowledge seen him before the trial, as well as an affidavit of the counsel explaining his action, and stating that he wrote and published his letter because he had been informed that the reasons for the adjournment of the court had been made public by the district attorney.

The judge gave his decision upon the motion as follows: " I am of the opinion that the facts presented make it neces-

sary to discharge the present jury from further consideration of this case, in order to prevent the defeat of the ends of justice, and to preserve the rights of the people and also to preserve the rights of the accused to be tried by a jury, every member of which can render a verdict free from constraint. It is manifest that the knowledge respecting the statement made by Ward, conveyed to the jury by the publication of the letter of the defendant's counsel, makes it impossible that in the future consideration of this case by the jury there can be that true independence and freedom of action on the part of each juror which is necessary to a fair trial of the accused." And after Goodnow and other jurors, being asked by the judge, had answered that they had read the publication in the newspapers, he added: "Therefore such a publication under the peculiar circumstances attending it affords, in my opinion, a sufficient ground to discharge the jury at this time." The judge thereupon ordered a juror to be withdrawn and the jury discharged. The defendant excepted to this order, and moved for an acquittal because of such discharge of the jury, and excepted to the denial of his motion.

On February 12 the case came on for trial before another jury, and a motion of the defendant to file a plea in bar on the ground of former jeopardy was opposed by the district attorney and denied by the court; and to this denial the defendant excepted.

The case was then tried, and was submitted by the judge to the jury on March 10 under instructions beginning as follows: "I have the right, under the laws of the United States, to give you my opinion on questions of fact, but I refrain from doing so because I am well satisfied of your capacity to understand what has been testified to in all these days that we have been here engaged. I shall confine myself to stating to you the law by which you are bound, simply calling your attention to the questions of fact which are to be decided by you, for, as you know, juries decide questions of fact, and not the court."

On the next day the jury came into court and asked to be discharged from further consideration of the case. To this request the court, after ascertaining by inquiry that the jury

required no further instructions in matter of law, replied. as follows: " This case has occupied a long time. It is a case of importance, and the discharge of the jury at this time would involve another trial. It seems to me that that should not be had unless in a case of necessity. I see in this case no such necessity. I cannot understand the failure to agree arises from any difference of opinion based upon the insufficiency of the evidence in this case. Whenever in the opinion of the court the testimony is convincing, it is the duty of the court. to hold the jury together. Therefore I must decline your request to be discharged."

The defendant excepted to the judge's statement to the jury that he regarded the testimony as convincing, and, being found guilty and sentenced to imprisonment for six years in a penitentiary, tendered a bill of exceptions, which was allowed by the judge, and sued out this writ of error.

*Mr. John Jay Joyce* (with whom was *Mr. Samuel Shella-barger*) for plaintiff in error.

I. The right of the trial court to discharge the jury before verdict is to exist in cases of " extreme and absolute necessity " (*People* v. *Goodwin*, 18 Johns. 187; *S. C.* 9 Am. Dec. 203), " inevitable necessity " (*Mitchell* v. *State*, 42 Ohio St. 383, 393), " legal necessity " (*Nolan* v. *State*, 55 Georgia, 521), " imperative necessity " (*McCorkle* v. *State*, 14 Indiana, 39), only if " some inevitable occurrence shall interpose and prevent the rendering of a verdict " (*United States* v. *Shoemaker*, 2 Mc-Lean, 114). The discretion of the court in reference to such a discharge is a " legal discretion, and to be exercised according to known rules " (*McKee's Case*, 1 Bailey (So. Car. Law) 651; *S. C.* 21 Am. Dec. 499; *Mount* v. *State*, 14 Ohio, 295; *S. C.* 45 Am. Dec. 542), " a discretion to be used only under very extraordinary and striking circumstances." *United States* v. *Coolidge*, 2 Gall. 364. Such a discretion cannot be absolute and irreviewable, for then there would be no protection against its wildest abuse, and it is a rule in criminal proceedings that nothing be done within the discretion of the court to the prejudice of the defendant, (*United States* v. *Shoemaker*, *supra*,)

and in fact in almost all of the cases cited below in treating of "jeopardy," the very character of the discussion shows, even where it is not directly asserted, that the court of error exercised the right to review the action of the court below in discharging the jury ; see also *United States* v. *Shoemaker, ubi supra*, where it is said " the first trial might be considered an experiment to draw forth the evidence in the case and ascertain if it be insufficient whether, on another trial, it might not be made strong enough to convict — nor could this right be safely exercised under the discretion," *i.e.* an unlimited discretion of the court. What shall govern this discretion? And as to the position of the accused "a right which depends on the will of the magistrate is no right at all." *O'Brian* v. *Commonwealth*, 9 Bush, 333.

The true rule is that the finding of the facts on which the discharge of the jury is based by the court below is final, but the determination whether such facts constitute a case of necessity is a question of law and open to review when such facts appear upon the record.

The great majority of the authoritative text writers hold that when the jury, being full, is sworn and added to the other branch of the court, and all the preliminary things of record are ready for trial, the prisoner has reached the jeopardy, from the repetition of which our constitutional rule protects him. 1 Bishop Crim. Law, §§ 1015, 1019 ; Cooley Const. Lim. (6th ed.) 399 ; Bigelow on Estoppel (5th ed.) 89. See also *Mitchell* v. *State*, 42 Ohio St. 383, 393, and cases there cited ; *Nolan* v. *State*, 55 Georgia, 521 ; *Lovett* v. *State*, 80 Georgia, 255 ; *State* v. *Callendine*, 8 Iowa, 288 ; *State* v. *Tatman*, 59 Iowa, 471 ; *Josephine's Case*, 39 Mississippi, 613 ; *Teat* v. *State*, 53 Mississippi, 439 ; *People* v. *Barrett*, 2 Caines, 100 ; *King* v. *People*, 5 Hun, 297 ; *Commonwealth* v. *Cook*, 6 S. & R. 577 ; *Commonwealth* v. *Fitzpatrick*, 121 Penn. St. 109 ; *Hilands* v. *Commonwealth*, 111 Penn. St. 1 ; *McCorkle* v. *State*, 14 Indiana, 39 ; *Adams* v. *State*, 99 Indiana, 244 ; *Powell* v. *State*, 17 Texas App. 345 ; *People* v. *Gardner*, 62 Michigan, 307 ; *O'Brian* v. *Commonwealth*, 9 Bush, 333 ; *Commonwealth* v. *Hart*, 149 Mass. 7 ; *Lee* v. *State*, 26 Arkansas, 260 ; *People* v.

*Cage,* 48 California, 323; *State* v. *McKee,* 1 Bailey (So. Car.) Law, 651.

II. It is not denied that in the Federal courts the trial judge in submitting a case to the jury may express his opinion upon the facts.

But it will be found from an examination of the authorities that the tendency is to confine the right of the court in this respect within well-defined limits, and that in criminal cases, especially, such an expression of opinion must be closely coupled with words giving the jury to understand that they are not to be bound by it, but that the determination of all matters of fact was within their province alone.

*Mr. Attorney General* appeared for the defendant in error, but the court declined to hear argument.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The general rule of law upon the power of the court to discharge the jury in a criminal case before verdict was laid down by this court more than sixty years ago, in a case presenting the question whether a man charged with a capital crime was entitled to be discharged because the jury, being unable to agree, had been discharged, without his consent, from giving any verdict upon the indictment. The court, speaking by Mr. Justice Story, said: "We are of opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think that, in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in

capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this descretion rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office." *United States* v. *Perez,* 9 Wheat. 579.

A recent decision of the Court of Queen's Bench, made upon a full review of the English authorities, and affirmed in the Exchequer Chamber, is to the same effect. *Winsor* v. *The Queen,* L. R. 1 Q. B. 289, 390; *S. C.* 6 B. & S. 143, and 7 B. & S. 490.

There can be no condition of things in which the necessity for the exercise of this power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused. As was well said by Mr. Justice Curtis in a case very like that now before us, " It is an entire mistake to confound this discretionary authority of the court, to protect one part of the tribunal from corruption or prejudice, with the right of challenge allowed to a party. And it is, at least, equally a mistake to suppose that, in a court of justice, either party can have a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment in the case." *United States* v. *Morris,* 1 Curtis C. C. 23, 37.

Pending the first trial of the present case, there was brought to the notice of the counsel on both sides, and of the court, evidence on oath tending to show that one of the jurors had sworn falsely on his *voir dire* that he had no acquaintance with the defendant; and it was undisputed that a letter since written and published in the newspapers by the defendant's counsel, commenting upon that evidence, had been read by that juror and by others of the jury. It needs no argument to prove that the judge, upon receiving such information, was

fully justified in concluding that such a publication, under the peculiar circumstances attending it, made it impossible for that jury, in considering the case, to act with the independence and freedom on the part of each juror requisite to a fair trial of the issue between the parties. The judge having come to that conclusion, it was clearly within his authority to order the jury to be discharged, and to put the defendant on trial by another jury ; and the defendant was not thereby twice put in jeopardy, within the meaning of the Fifth Amendment to the Constitution of the United States.

The only other exception argued is to the statement made by the judge to the second jury, in denying their request to be discharged without having agreed upon a verdict, that he regarded the testimony as convincing. But at the outset of his charge he had told them, in so many words, that the facts were to be decided by the jury, and not by the court. And it is so well settled, by a long series of decisions of this court, that the judge presiding at a trial, civil or criminal, in any court of the United States, is authorized, whenever he thinks it will assist the jury in arriving at a just conclusion, to express to them his opinion upon the questions of fact which he submits to their determination, that it is only necessary to refer to two or three recent cases in which the judge's opinion on matters of fact was quite as plainly and strongly expressed to the jury as in the case at bar. *Vicksburg &c. Railroad* v. *Putnam,* 118 U. S. 545 ; *United States* v. *Philadelphia & Reading Railroad,* 123 U. S. 113 ; *Lovejoy* v. *United States,* 128 U. S. 171.

*Judgment affirmed.*