UNITED STATES of America

v.

William GARBER, Individually and as
President of William Garber, Inc.

Crim. No. 22539.

United States District Court
E. D. Pennsylvania.

Jan. 27, 1967.

Drew J. T. O'Keefe, U. S. Atty., J.
Shane Creamer, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Walter E. Knecht, Jr., William J.
Campbell, Philadelphia, Pa., for defendant.

## OPINION

KRAFT, District Judge.

The defendant, William Garber, was convicted, as an individual and as president of William Garber, Inc., of wilfully attempting to evade and defeat personal and corporate income taxes for the years 1960 and 1961, upon all counts of a four-count information.

His motion for new trial assigned twelve reasons, but the brief and argument of counsel were limited to the following *two* grounds:

(1) the Court erred in commenting on Exhibit G–9 in response to a question from the jury;

(2) the Court erred in locking up the jury overnight and permitting it to deliberate an excessive amount of time.

Briefly stated, the evidence which the jury found credible, was sufficient to establish that the defendant failed to report, as income $15,000 for 1960 and $28,000 for 1961. The defendant admitted that he did not report the $15,000, but disputed the accuracy of the $28,000. He contended, in defense, that he used these business receipts to purchase, for cash, merchandise, which he asserted he had sold in the regular course of his business.

As a part of its case, the United States utilized a schedule (Exhibit G–9) prepared by a special agent of the Internal Revenue Service. This schedule reflected a comparison of periodic bank deposits, made by the defendant for the year 1960, with deposits recorded in a spiral notebook (Exhibit G–6) by the defendant, which he discarded in a trash box in January of 1962.

In addition to the thirty dated transactions compared, there appears on the schedule a column headed "Omitted Receipts" which purports to show thirty omissions of $500 each, totalling $15,000 for the year 1960, which the Government claimed the defendant earned but failed to report as income.

The record discloses that at 8:03 P.M. on the evening of September 27, the jury returned to the courtroom with the following inquiry:

"The Jury would like to know if it is possible to get a list of suppliers for Mr. Garber who testified and to what extent (sic) payments, were either made by cash or check or just a list of supplies (sic) who testified."

(Foreman) (Exhibit C–1)

At the outset, we again instructed the jury that it must consider the evidence produced by *both* sides at the trial. Before we proceeded to recount the testimony of the suppliers who testified, we again cautioned the jury that it was their " * * * recollection that controls, not counsel's or mine." (n. t. 359, 360)

Thereafter, we stated our recollection of the testimony of all the suppliers who testified. (n. t. 360–363) Then, we addressed our attention to the remaining part of the jury's question. " * * * to what extent were payments made by cash or check." (n. t. 363) In our response to this aspect of the jury's inquiry, we reviewed the evidence which disclosed that the defendant did not give specific figures of the payments said to have been made to the suppliers in cash or by check:

"As I recall it, he said that the whole of the $15,000 which he failed to report, which is shown as not deposited in any bank in round figures of $500 each, he says the whole of that was used to pay in cash.

"He said that he did get receipts for the payments that he made in cash but that he doesn't have the receipts because, he said, he left them in the store when he sold the business.

"That, in substance, according to my recollection, is the best I can answer your question.

"I repeat, it is your task to use your recollection." (n. t. 363, 364)

When the Court inquired of counsel whether, in their view, anything might have been overlooked in the Court's response to the jury's question, defense counsel recalled that one supplier had

testified that he was paid both by cash and by check. (n. t. 364) We again admonished the jury to rely on its recollection and also reminded the jury of the defendant's accountant's work sheets (Exhibit G–11), which set forth checks that the defendant received from his corporation to reimburse him for his cash purchases of merchandise. (n. t. 365)

Defense counsel further elaborated on the position of the defendant on this issue as follows:

"If your Honor please, the defendant's position on that, if you will recall, sir, that the monies that were expended for minor items such as light bulbs and stationery came from the $500 check drawer, that the check was issued to Mr. Garber so that he might cash the check and put the money back in the drawer that came from the drawer, not that came from Mr. Garber, that came from his drawer."

THE COURT: *"The jury will so understand.* Then again, members of the jury, in analyzing this situation, you can refer to one of the exhibits which shows these 30 items of $500 each, and you may inquire in your own minds whether if Mr. Garber was paying for meat supplies or supplies for his store in cash it came out always an even $500.

"That is all that I can tell you. And I continue to commit the matter to your care for deliberation and decision." (n. t. 365, 366) (emphasis ours)

Defendant's counsel thereupon excepted to our reference to Exhibit G–9, as being far beyond the scope of the jury's question and moved for withdrawal of a juror. We denied the motion. (n. t. 366)

We then advised the jury of the dissatisfaction of defendant's counsel with our allusion to Exhibit G–9 and instructed the jury " * * * not to give that exhibit or what I said any particular or special significance any more than any other item of evidence in the case."

The defendant urges that our reference to Exhibit G–9 in response to the question propounded by the jury laid undue emphasis on the fact that the omissions in deposits were in round figures of $500.00 each and was, hence, prejudicial. Defendant urges that it " * * had nothing to do with the jury's request for ' * * * a list of suppliers for Mr. Garber who testified, and to what extent payments were either made by cash or check. * * * ' *It in effect constituted an* argument to the jury." (emphasis ours)

In short, the defendant claims that our language gave the jury the prejudicial impression that it was "highly unlikely that the cash purchases would always come out to any even sum."

■ Well-settled law permits the trial judge to comment upon the evidence "whenever he thinks it will assist the jury in arriving at a just conclusion." Simmons v. United States, 142 U.S. 148, 155, 12 S.Ct. 171, 173, 35 L.Ed. 968 (1891) In *Simmons*, a criminal case, the trial judge denied the jury's request to be discharged when it could not agree and said that he regarded the testimony as convincing. In affirming the conviction, the Supreme Court said at page 155, 12 S.Ct. at page 172:

*"But at the outset of his charge he had told them, in so many words, that the facts were to be decided by the jury, and not by the court.* And it is so well settled, by a long series of decisions of this court, that the judge presiding at a trial, civil or criminal, in any court of the United States, is authorized, whenever he thinks it will assist the jury in arriving at a just conclusion, to express to them his opinion upon the questions of fact which he submits to their determination, that it is only necessary to refer to two or three recent cases in which the judge's opinion on matters of fact was quite as plainly and strongly expressed to the jury as in the case at bar." (cases cited) (emphasis ours)

In United States v. Philadelphia & Reading Rd. Co., 123 U.S. 113, 8 S.Ct.

**64**

77, 31 L.Ed. 138 (1887) the trial judge, who was affirmed, commented as follows:

> "In other words, while the court does not desire to control your finding, but submits the question to you it is of opinion that you should not, under the circumstances, find for the plaintiff."

■ A trial judge may, within his discretion, in submitting a case to the jury " * * * comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts; and the expression of such an opinion, when no rule of law is incorrectly stated, *and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error.*" Vicksburg & Meridian Rd. Co. v. Putnam, 118 U.S. 545, 553, 7 S.Ct. 1, 2, 30 L.Ed. 257 (1886) (emphasis ours)

■ The jury " * * * should be made distinctly to understand that the instruction is not given as to a point of law by which they are to be governed, but as a mere opinion as to the facts, to which *they should give no more weight* than it was entitled to." Starr v. United States, 153 U.S. 614, 625, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894) (emphasis ours)

■ "Under the Federal Constitution the essential prerogatives of the trial judge as they were secured by the rules of the common law are maintained in the federal courts." Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933).

■ "One long recognized difference between the trial procedure in the federal courts and that in many state courts is the greater freedom that is allowed to a federal court, as compared with that allowed to a state court, to comment upon the evidence when submitting a case to the jury. [cases cited] The federal practice is based upon the rules of common law comparable to those mentioned in the Seventh Amendment." Bute v. People of State of Illinois, 333 U.S. 640, 650, 68 S.Ct. 763, 768, 92 L.Ed. 986 (note 4) (1948)

■ "It is no longer an open question that a judge of a court of the United States may, in his discretion, express his opinion on the evidence and the credibility of the witnesses. *The only proviso is that the jury should be made to understand that it is in no way bound by any observations of the court, and that it is the sole judge with respect to the issues of fact.*" United States v. Stayback, 212 F.2d 313, 319 (3 Cir. 1954) cert. denied 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955) (emphasis ours); National Dairy Products Corp. v. United States, 350 F.2d 321, 333 (8 Cir. 1965).

■ We are persuaded that the language now complained of was no expression of opinion by the trial judge, nor was it an argument. Following an elaboration of defendant's position by his counsel, we directed the jury's attention to the existence of other evidence on the question and informed them that, by self-inquiry, they might weigh the probabilities and improbabilities. The jury was directed to give the exhibit and the trial judge's statement no special significance. We believe, under the cases cited,[1] we might properly have told the jury, had we so opined, that it was our opinion that it was improbable that such expenses would, on each of thirty occasions, amount to precisely $500, provided the determination was left to the jury. We did not do so. As the entire charge and the supplemental proceeding discloses the resolution of factual issues was clearly and unequivocally left to the jury.

---

1. The cases relied upon by the defendant are inapposite on their facts and are inapplicable to the precise situation present in this case. In Minner v. United States, 57 F.2d 506, 513 (10 Cir. 1932) the trial judge "wholly failed to sum up the evidence in behalf of Minner." In United States v. Clarke, 343 F.2d 90 (3 Cir. 1965) prejudice resulted from inadmissible evidence which had been submitted to the jury.

The defendant's remaining complaint, that the jury was detained overnight, is utterly devoid of merit. Counsel, in his brief on this point, makes the following grossly exaggerated statement: "Thus the jury had the case all told, a matter of some 27 hours with time out for meals and presumably, some sleep." (page 6)

From the record and our own notes the jury actually deliberated as follows:

| Date | Time | |
|------|------|---|
| 9/27/66 | 12:40 p. m. | Charge completed, Jury sent to lunch. |
| 9/27/66 | 2:15 p. m. | Jury began deliberations. |
| 9/27/66 | 6:15 p. m. | Jury recessed deliberations for dinner. |
| 9/27/66 | 8:00 p. m. | Jury resumed deliberations. |
| 9/27/66 | 9:30 p. m. | Jury recessed deliberations for rest in hotel overnight. |
| 9/28/66 | 9:00 a. m. | Jury resumed deliberations. |
| 9/28/66 | 12:30 p. m. | Jury recessed deliberations for lunch. |
| 9/28/66 | 2:15 p. m. | Jury resumed deliberations. |
| | 3:50 p. m. | Jury notified Court it had reached a verdict. |
| | 4:00 p. m. | Verdict rendered in Court. |

Counsel expresses remarkable concern that members of the jury, particularly the female jurors, were not prepared to spend a night away from home. The jurors made no complaint. Counsel complains next that the Court failed to inquire of the jury on the next day, about the state of its deliberations. Had we done so, we would likely have been charged with duress in seeking to compel a verdict.

The foregoing schedule discloses that the jury actually deliberated 5½ hours on September 27, and approximately 5 hours on September 28 or a total of about 10½ hours.

Somewhat significantly, we think, counsel omits to mention that it was his own objection which necessitated the overnight detention of the jury. We inquired of counsel, in chambers, whether they would agree to permit the jury to suspend its deliberations at a reasonable hour, to separate and go to their homes under appropriate instructions and to resume deliberations on the morning following. Government's counsel expressed willingness, but defendant's counsel, as was his right, objected. The trial judge was faced with the usual dilemma: (a) discharge the jury after 4½ hours deliberation; (b) send the jury home over defendant's objection in a criminal case, or, (c) detain the jury overnight in a neighboring, modern hotel. We elected to detain the jury in the interests of justice and time. Any inconvenience to jurors was de minimis and ordinary and in no way compelled them to reach a decision.

It has been our policy, absent some notice or request from a jury, to refrain from inquiring, sua sponte, of the progress or state of its deliberations. Consistently with this policy we did not inquire on September 28, because we did not wish possibly to convey to the jurors the erroneous impression that the trial judge had become impatient and was pressing them for a verdict.

Finding no merit in the defendant's motion, we enter the following

### ORDER

Now, this 27th day of January 1967,

It is ordered that the defendant's motion for a new trial be, and it is, denied, and

It is further ordered that defendant appear for sentence on February 8, 1967, at 1:45 P.M.