### UNITED STATES of America ex rel. Donald SOMERVILLE, Petitioner-Appellant,

v.

### STATE OF ILLINOIS, Defendant-Appellee.

### No. 17817.

United States Court of Appeals, Seventh Circuit.

May 14, 1970.

Rehearing Denied Aug. 19, 1970.

Ronald P. Alwin, Martin S. Gerber, Chicago, Ill., for appellant.

Morton Friedman, Thomas J. Immel, Asst. Atty., Gen., Chicago, Ill., William J. Scott, Atty. Gen. of Illinois, Joel M. Flaum, Asst. Atty. Gen., Chicago, Ill., of counsel, for appellee.

Before MAJOR and CASTLE, Senior Circuit Judges, and FAIRCHILD, Circuit Judge.

CASTLE, Senior Circuit Judge.

Donald Somerville, petitioner-appellant, prosecutes this appeal from the District Court's dismissal of his petition for habeas corpus which asserted, in substance, that he was being held in custody unlawfully pursuant to a sentence imposed following his state-court conviction in a trial which subjected him to double jeopardy in violation of the Fifth Amendment. The District Court dismissed the petition for failure to state a claim upon which relief could be granted. We affirm.

■ In November 1965, following a trial in the Circuit Court of Cook County, Illinois, petitioner was convicted by a jury under a November 3, 1965, indictment charging theft [1] and was sentenced to the penitentiary for not less than two nor more than ten years. Upon his arraignment on this indictment the petitioner had filed a motion to dismiss the indictment on the grounds that he had previously been indicted on March 19, 1964, for the same offense, a jury impaneled and sworn on November 1, 1965, to try the issues, and on November 2, 1965, a motion of the State to nolle prosse was sustained over the objections of petitioner. The March 19, 1964, indictment did not allege intent to permanently deprive the owner of the use or benefit of the property,[2] and the State's motion for a mistrial and to nolle prosse was grounded on the assertion that this indictment

did not allege an offense and was therefore void. Petitioner's motion to dismiss the second indictment and for discharge was denied. His trial proceeded and resulted in the conviction assailed in the District Court habeas corpus proceeding on the basis of double jeopardy.[3]

■ At the outset we recognize that petitioner's claim of double jeopardy is to be tested by the application of federal standards. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (No. 57, October Term, 1969, April 6, 1970); Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (No. 24, October Term, 1969, April 6, 1970).[4]

■ Petitioner emphasizes that he did not attack the validity of the earlier March 19, 1964, indictment nor consent to its dismissal but, on the contrary, objected to the prosecutor's motion for a mistrial and to nolle prosse. He contends that he thus avoided any bar to his subsequent assertion of double jeopardy which might be based on any doctrine of consent, waiver or estoppel. And, petitioner argues that Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 stands for the proposition that once the jury had been selected and sworn to try him on the March 19, 1964, indictment jeopardy attached so as to bar the prosecution under the subsequent indictment, and that United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 compels the conclusion that this is so notwithstanding the invalidity of the earlier indictment.

1. Knowingly obtaining unauthorized control over stolen property etc. as defined by Ill.Rev.Stat.1963, ch. 38, § 16.1(d).

2. Intent to so deprive the owner of the property is an essential element of the statutory offense sought to be charged, and its omission invalidated the indictment. People v. Somerville, 88 Ill.App. 2d 212, 232 N.E.2d 115; People v. Edge, 406 Ill. 490, 493, 94 N.E.2d 359; People v. Harris, 394 Ill. 325, 68 N.E.2d 728.

3. Petitioner's conviction was earlier affirmed on appeal which rejected his claim

of double jeopardy. People v. Somerville, 88 Ill.App.2d 212, 231 N.E.2d 701, leave to appeal denied 37 Ill.2d 627, cert. den. 393 U.S. 823, 89 S.Ct. 81, 21 L.Ed. 2d 94.

4. The State does not question the retroactivity of *Benton* as applied to the circumstances of the instant case. This appears to be in accord with *Ashe, supra,* 90 S.Ct. at 1191, n. 1, although the scope of *Benton's* retroactivity has not been resolved. See Waller, *supra,* 90 S.Ct. at 1186, n. 2.

In *Downum*, on the morning the case was called for trial both sides announced ready. A jury was selected, sworn, and instructed to return at 2 p. m. When it returned the prosecution asked that the jury be discharged because its key witness on two counts of the indictment was not present—a fact discovered by the prosecutor only during the noon recess. The witness had not been served with a summons, and no other arrangements had been made to assure his presence. The jury was discharged. In sustaining the claim of double jeopardy as to a retrial commenced two days later, the Supreme Court, while recognizing the valuable right of the defendant to proceed to trial before the jury he has participated in selecting, cautioned that at times this "valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest—when there is an imperious necessity to do so." In this connection reference was made to Keerl v. Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (a "hung jury"); Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (tactical problems confronting an army in the field justifying withdrawal of a court-martial proceeding and commencement of another one on a later date); and Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (likely existence of juror bias). Thus *Downum* explicitly teaches that it does not establish an absolute right in a defendant to have his trial completed by the jury selected and sworn for that purpose which in all circumstances bars discharge of that jury without his consent and a subsequent trial for the same offense.

In United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300, Ball was indicted, together with two other men, for the murder of one William T. Box. He was acquitted and his codefendants were convicted. They appealed and won a reversal on the ground that the indictment erroneously failed to aver the time or place of Box's death. All three defendants were retried, and this time Ball was convicted. The Supreme Court sustained his double jeopardy claim, notwithstanding the invalidity of the original indictment on which he was acquitted. The precise holding as to Ball is succinctly stated (163 U.S. 662, 671, 16 S.Ct. 1192, 1195) as follows:

> "As to the defendant who had been acquitted by the verdict duly returned and received, the court could take no other action than to order his discharge. The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense."

The "acquittal" appears to have been the operative factor dictating the result in *Ball*, not the mere circumstance that a jury had been impaneled and sworn. This is further evidenced by the observation made in *Ball* (p. 669, 16 S.Ct. p. 1194) that:

> "After the full consideration which the importance of the question demands * * * and, the question being now for the first time presented to this court, we are unable to resist the conclusion that a general verdict of acquittal upon the issue of not guilty to an indictment undertaking to charge murder, and not objected to before the verdict as insufficient in that respect, is a bar to a second indictment for the same killing."

And, it was the "acquittal" which was relied upon in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, in support of the holding that *Benton* was "totally indistinguishable" from *Ball*. In reference to *Ball* it is said (395 U.S. 784, 797, 89 S.Ct. 2056, 2064), "[t]he Court refused to allow the Government to allege its own error to deprive the defendant [Ball] of the benefit

of an acquittal by a jury", after which the Court went on to say:

"This case is totally indistinguishable. Petitioner was acquitted of larceny. He has, under *Green* [Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199] a valid double jeopardy plea which he cannot be forced to waive. Yet Maryland wants the earlier acquittal set aside, over petitioner's objections, because of a defect in the indictment. This it cannot do. Petitioner's larceny conviction cannot stand."

We perceive no proper basis for isolating the impanelling and swearing of the jury as constituting the conceptual charisma which at that point, and notwithstanding invalidity of the indictment, always serves to establish that jeopardy which, absent the defendant's consent, bars a subsequent trial for the same offense. We believe our conclusion in this respect is reinforced by the admonition in United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448, that:

"While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle [that part of the holding in United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300, which permitted retrial of the two defendants who had obtained reversal of their convictions because of invalidity of the indictment] are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest. The underlying purpose of permitting retrial is as much furthered by application of the rule to this case as it has been in cases previously decided."

In the instant appeal petitioner's conviction, unlike Ball's did not follow a previous acquittal of the same offense, and we are of the opinion that the rationale of the pertinent and governing decisions do not warrant a conclusion that the mere impanelling and swearing of the jury under the invalid indictment precluded discharge of that jury except under a bar of double jeopardy which put him irrevocably beyond the reach of further prosecution for the offense under a valid indictment.

The judgment order of the District Court dismissing the petitioner's habeas corpus action is affirmed.

Affirmed.

MAJOR, Senior Circuit Judge (dissenting).

In my judgment, the decision in Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100, that jeopardy attached at the time the jury was impaneled under facts as similar to those in the instant case as two peas in the same pod, is controlling. Both cases were dismissed on motion of the Government because of its own fault. In Downum, it was the failure of the Government to procure the attendance of a material witness; in the instant case, it was an allegedly defective indictment for which it was responsible.

The quotation from Downum in the majority opinion is not complete. In that case the court further stated (page 736, 83 S.Ct. page 1034):

"Harassment of an accused by successive prosecutions or declaration of a

mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches. Gori v. United States, *supra*, 367 U.S. 369, 81 S.Ct. 1526–1527, 6 L.Ed.2d 901. But those extreme cases do not mark the limits of the guarantee. The discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very extraordinary and striking circumstances,' to use the words of Mr. Justice Story in United States v. Coolidge, 25 Fed. Cas. pp. 622, 623. For the prohibition of the Double Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy.' United States v. Ball, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300."

The proclamation in Downum cannot be swept aside because the court recognized and referred to some cases where defendant's right to have his trial completed was subordinated to the public interest—when there is "an imperious necessity to do so" or in "very extraordinary and striking circumstances." These so-called exceptions were of no avail to the Government in Downum, nor are they in the instant case.

The decision in Downum as to when jeopardy attaches, given the facts of that case, has never been overruled or criticized by any court of which I am aware. In fact, it has often been recognized as the prevailing rule.

There are, of course, cases where the courts have refused to apply the rule of Downum, because of different factual situations. Usually such cases distinguish Downum on the basis that a judgment of conviction was vacated, reversed on appeal or the indictment dismissed on motion of the defendant. Even these cases, however, recognize the vitality of Downum where the dismissal is made on motion by the Government. Typical of such cases is United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448, where a judgment of conviction was set aside as a result of a collateral attack by the defendant. The court held that defendant could not rely on double jeopardy, and in doing so stated (page 467, 84 S.Ct. page 1590):

"Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100, is in no way inconsistent with permitting a retrial here. There the Court held that when a jury is discharged because the prosecution is not ready to go forward with its case the accused may not then be tried before another jury."

A case much in point which vividly illustrates the distinction between cases where a dismissal is procured on motion of the Government and those where it is procured on motion of the defendant is the recent decision of this court in United States v. Franke, 409 F.2d 958, where we denied defendant's plea of double jeopardy on the ground that the case relied upon as constituting jeopardy was dismissed on defendant's motion. In doing so we recognized Downum but distinguished it on the facts. We reasoned (page 959):

"We think that since the original indictment was dismissed *on defendants' motion* the denial of the double jeopardy motion was proper. See United States v. Ewell, 383 U.S. 116, 124–125, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), where defendants' convictions were set aside on their own motion and the Double Jeopardy Clause was found not to bar retrial for the same offense. See also United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), where the Court held the Double Jeopardy Clause not violated by retrial of the same alleged crimes after Tateo's conviction on a plea of guilty had been set aside *on his motion*. It is enough for us to say that here defendants' motions caused dismissal of the indictment—even though the order of dismissal came after the selection of jury—and retrial under the corrected indictment is not precluded by the Double Jeopardy Clause. If, after convictions are overturned at instance of defendants, retrials are not barred by the Double Jeopardy Clause, *a fortiori*, defendants' trial under the corrected indict-

ment here is not barred." (Italics supplied.)

As to Downum we stated (page 959):

"In Downum the jury was discharged because the prosecution was not ready to proceed. Pleas of former jeopardy were denied and the Supreme Court reversed. The Supreme Court in Tateo said that Downum was not inconsistent with the Tateo rule. 377 U.S. at 467, 84 S.Ct. 1587. Since we follow Tateo it follows that our decision is not inconsistent with Downum. *Ipso facto* our decision here is not inconsistent with Cornero v. United States, 48 F.2d 69, 74 A.L.R. 797 (9th Cir. 1931), a case involving facts similar to Downum, and which was approved in Downum, 372 U.S. at 737, 83 S.Ct. 1033."

The Supreme Court in Downum quoted from Cornero (372 U.S. page 737, 83 S.Ct. page 1035):

" 'The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy. There is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses.' "

United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300, is wholly irrelevant to the issue as to whether jeopardy attached at the time the jury was impaneled as no such issue was before the court. The sole pertinency of Ball to the situation before us is that it completely refutes the State's argument that the defendant was not in jeopardy because the indictment, allegedly defective, stated no offense and a judgment entered thereon would have been void. In Ball, the court held (page 670, 16 S.Ct. page 1195):

"But, although the indictment was fatally defective, yet, if the court had jurisdiction of the case and of the party, its judgment is not void, but only voidable by writ of error, and until so avoided cannot be collaterally impeached." (Quoted with approval in Benton v. Maryland, 395 U.S. 784, 797, 89 S.Ct. 2056, 23 L.Ed.2d 707.)

In the instant matter the court had jurisdiction of the case and the parties, and a judgment rendered after trial would have been voidable, not void.

The majority opinion places much stress on Ball, supposedly for the purpose of showing that jeopardy did not attach when the jury was impaneled. In my view, for reasons previously stated, such reasoning is not sound. If it has any merit, it is strange that the Supreme Court when it decided Downum April 22, 1963, and determined that jeopardy attached when the jury was impaneled, was unaware of its previous decision in Ball.

In my view, the decision in Downum requires a reversal of the order appealed from.