**UNITED STATES of America**

v.

**Rethamae McKOY.**

**Crim. No. 77–432.**

United States District Court, E. D. Pennsylvania.

April 20, 1978.

Robert C. Fourr, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Louis Lipschitz, Philadelphia, Pa., for defendant.

## MEMORANDUM

FOGEL, District Judge.

Defendant's motion to dismiss the indictment on the grounds of an alleged violation of her Fifth Amendment protection against double jeopardy was denied by Order dated March 21, 1978. This memorandum sets forth the basis for that denial.

### I. FACTS

The defendant, Rethamae McKoy, was indicted October 5, 1977, on three counts charging: possession of stolen mail, 18 U.S.C. § 1708; aiding and abetting forgery of a United States Treasury check, 18 U.S.C. §§ 495 and 2(a); and aiding· and abetting uttering of a forged United States Treasury check, 18 U.S.C. §§ 495 and 2(a). All of the three counts of the indictment find a common thread in the following allegations: that on or about October 21, 1976, Mrs. McKoy possessed a United States Treasury check which was stolen from the mails; that one Zelda Crabbe forged the signature of the payee on the check; and then Mrs. McKoy had another unnamed person negotiate the check at a store. ·

At her arraignment on October 11, 1977, Mrs. McKoy pled "not guilty" to all counts.

Defendant filed three pretrial motions: (1) to dismiss the indictment; (2) to suppress oral statements; and (3) to suppress photographic identification. A hearing was held in open court on January 24, 1978, in order ·to adduce testimony and hear argument on these motions.

At this hearing, Evan Jenkins, a Secret Service Special Agent, testified as to his investigation. Jenkins stated that Grigori Piatigorsky told him that the defendant was present in his store when the check was negotiated by another woman.

Upon learning that Louis Lipschitz, Esquire, counsel for defendant, had spoken with Piatigorski that very morning, and that Piatigorski had told Mr. Lipschitz that the defendant was not in the store when the check was cashed, the Court immediately raised the issue of the propriety of Mr. Lipschitz continuing as counsel in a situation in which he could be a material and valuable witness for his client.[1]

1. THE COURT: How can you be testifying as to matters that might go to issues of credibility, under not only the canons but under the rules of our court, and not have other counsel here to handle the case? N.T. 4–5, 1/24/78.

Mr. Lipschitz explained that he had just spoken to Mr. Piatigorsky that day and that there had not been sufficient time to consider the problem.

As to the motion to suppress photographic identification, Mr. Lipschitz said that his testimony would directly contradict Mr. Piatigorsky's expected testimony. Mr. Lipschitz stated that his testimony would only be needed for that motion. We stated that other counsel should be obtained in connection with the motion to suppress photographic identification. Mr. Lipschitz agreed and asked the Court to set another date for the hearing.

We also said that if the motion to suppress was denied, then Mr. Lipschitz would have a duty to bring forward his testimony at trial. The Court further stated that if Mr. Lipschitz testified at the trial, then he would not be permitted to remain as counsel.[2]

After hearing testimony and argument, the Court granted the motion to suppress oral statements and denied the motion to dismiss the indictment. The hearing on the remaining motion was rescheduled in order to give Mr. Lipschitz time to discuss with Mrs. McKoy the issue of whether he would testify as a witness or continue as her attorney.

We stated that Mr. Lipschitz had a duty to his client to decide if his value as a witness was important both at the pretrial hearing, and at the trial itself; if so he was told that he must obtain other counsel. The Court informed Mr. Lipschitz, that, in light of this advance notice of the Court's position, he would not be allowed to plead surprise at the trial if this issue was again raised.

Mr. Lipschitz elected to refrain from testifying, and, at the February 17, 1978 hearing, he acted as counsel for Mrs. McKoy. Additional testimony on the motion was heard on February 21, 1978, and Mr. Lipschitz again did not testify. The motion to suppress the photographic identification was then denied by the Court.

At the trial before a jury, Mr. Piatigorsky positively identified the defendant as the person who brought a girl with the United States Treasury check into his store on October 21, 1976. He stated that Mrs. McKoy asked him to accept the check since it was given to the girl, her daughter, by the girl's grandfather.

Piatigorsky stated that Mrs. McKoy returned to his store after the bank had notified him that the check had been forged. Mrs. McKoy told him to not worry, in that she would return the money to him, if there were a "misunderstanding."

Piatigorsky further stated that Mrs. McKoy returned to his store, at a later date, and told him that she had not been there when the check was cashed. Mrs. McKoy testified that she never saw or possessed the check in question and was not in the store when it was cashed.

Upon further questioning on direct examination, Mrs. McKoy was asked about recent visits made to Piatigorsky's store. She stated that she went to the store with a girlfriend named Tammy Tamara. She did not state that Mr. Lipschitz was with her in the store. Counsel for the defendant asked for a sidebar conference with the Court at this point.

The Court was informed by both counsel that they had understood the Court to have

---

2. THE COURT: . . . I would rule that under these circumstances where you would be a material witness, that particularly in view of the objection made by the United States Attorney, properly made, that I then could not permit you to continue as counsel if you are going to be a material witness and you are not prepared to say today whether or not you may be a material witness. Is that correct?

MR. LIPSCHITZ: Yes, sir. N.T. 68, 1/24/78.

THE COURT: It would be absolutely, abundantly clear that you could not be counsel at the trial itself and, indeed, I think you would have an affirmative duty then to appear as a witness.
MR. LIPSCHITZ: Yes, sir. N.T. 126, 1/24/78.

agreed to allow Mr. Lipschitz to continue as counsel as long as Mrs. McKoy omitted any mention of Mr. Lipschitz's presence at the store on the day in question. The Court made it clear that it had not agreed to the arrangement as described.[3]

Mr. Lipschitz indicated that if Mrs. McKoy told the truth then he would not be able to continue as her counsel in the case. After a lengthy sidebar conference, the Court decided to continue with the testimony and speak with the defendant during the recess.

Mrs. McKoy testified that after her conversation with Piatigorsky she went to the courthouse with Tammy Tamara and Mr. Lipschitz. Although she did not state that Mr. Lipschitz was in the store with her, she did leave the question open.

The jury was excused and the Court asked the parties for an explanation. Mr. Lipschitz stated:

> If Your Honor please, I spoke with Mrs. McKoy and I asked her please not to mention my name as being one of the people who was in the store when a discussion took place with Mr. Piatigorsky. I did not want to participate as a witness nor did I want to be put in a position where I would be disqualified from continuing with my representation of Mrs. McKoy and I had asked her not to mention my name. N.T. 73–74, 2/23/78.

The Court then informed Mrs. McKoy of her right to a complete defense which would include the testimony of Mr. Lipschitz. The Court indicated that Mr. Lipschitz's testimony "could be very important." N.T. 77, 2/23/78.

Mr. Lipschitz then explained in detail what had occurred on the visit to Mr. Piatigorsky's store.

The Court stated that it was clear that the interests of justice dictated that Mr. Lipschitz may have to testify because he

had "substantial evidence and the jury should hear it." Withholding the evidence from the jury could constitute an obstruction of justice and the Court stated its refusal to become a party to it.

In order to review the canons of ethics and the applicable rules of the Court, a short recess was taken.

The Court then met with counsel for both parties including, at the request of the Court, John Penrose, Chief of the Criminal Division of the United States Attorney's Office. During the course of this lengthy conference, the various alternative courses of action were discussed.

*First,* permitting the trial to continue without Mr. Lipschitz testifying was discussed. The Court stated that the entire truth of the matter should not be hidden. The possibility of a successful appeal after conviction for the failure to call Mr. Lipschitz was explored.

*Second,* permitting Mr. Lipschitz to continue as counsel and to testify was proposed; *United States v. Fiorillo,* 376 F.2d 180 (2d Cir. 1967), was cited by the Court as a precedent. The Government took the position that it would not agree to Mr. Lipschitz continuing as counsel or testifying. N.T. 94, 103–4, 134, 2/23/78. Mr. Lipschitz did not express the desire to testify on behalf of Mrs. McKoy.

*Third,* the question of defendant's knowledgeable and voluntary consent to the proposition that Mr. Lipschitz not be called as a witness was examined. The Court delved into the question of whether Mrs. McKoy really had independent counsel who could fairly and impartially inform her of her rights.

*Fourth,* appointment of a neutral attorney to review the entire record and advise both the defendant and the Court on the question of whether Mr. Lipschitz should

---

**3.** THE COURT: . . . if she [Mrs. McKoy] has been instructed not to tell the entire truth, notwithstanding any agreement between you, Mr. Lipschitz and Mr. Fourr for the Government, an agreement which I think is outrageous, if I may say, Mr. Fourr—

MR. FOURR: I understand that we had your participation.
THE COURT: You certainly have no participation other than to the entire truth. N.T. 61–62, 2/23/78.

continue as counsel or whether he should testify was raised.

*Fifth,* the propriety of the Court again informing the defendant of the situation in the absence of independent counsel was reviewed.

*Sixth,* dismissal or suspension of the jury with a recall after new counsel could evaluate the situation was considered as an option.

*Seventh,* potential prejudice to the defendant and possible bases for appeal if any of the above positions were chosen, were reviewed.

The Government did not object to the finding of a mistrial, but declined to so move. At this point the jury was seated and a mistrial was declared *sua sponte.* The defendant objected to the mistrial. The Court took under advisement the Government's motion to remove Mr. Lipschitz as counsel pending the report of the independent counsel.

Andrew G. Gay, Esquire was appointed by the Court as the independent counsel to advise Mrs. McKoy.

On March 7, 1978, Mr. Lipschitz filed the instant motion to dismiss the indictment.

On March 13, 1978, after a conference at which Mr. Gay reported to the Court, the Court ruled that the defendant had voluntarily and intelligently waived her right to call Mr. Lipschitz as a witness and that Mr. Lipschitz could continue to represent the defendant so long as he did not testify.

On March 21, 1978, the motion to dismiss the indictment was denied by Order.

Notice of Appeal to the Third Circuit Court of Appeals was filed March 28, 1978.

## II. *DISCUSSION*

The Fifth Amendment of the United States Constitution provides that "no person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."

The defendant contends that, since jeopardy attached when the jury was impanelled, *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), she may not be retried after a mistrial has been declared by the Court *sua sponte.*

Mr. Justice Story formulated the principles which guide the federal courts in their application of the concept of the Fifth Amendment's double jeopardy prohibition in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

This test is still accepted and sets forth the requisite criteria. *Illinois v. Somerville,* 410 U.S. 458, 461, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Downum v. United States,* 372 U.S. 734, 735, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *United States ex rel. Stewart v. Hewitt,* 517 F.2d 993, 995 (3d Cir. 1973).

The Supreme Court has resisted pressure to particularize the circumstances under which the declaration of a mistrial is proper. *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974, *reh. den.,* 337 U.S. 921, 69 S.Ct. 1152, 93 L.Ed. 1730 (1949).

The Supreme Court ". . . has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be served. . . ." *Brock v. North Carolina,* 344 U.S. 424, 427,

73 S.Ct. 349, 350, 97 L.Ed. 456 (1952); *Illinois v. Somerville, supra.*

■ "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Gori v. United States*, 367 U.S. 364, at 368, 81 S.Ct. 1523, at 1526, 6 L.Ed.2d 901 (1961); *See, Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); *Logan v. United States*, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); *Dreyer v. Illinois*, 187 U.S. 71, 85, 86, 23 S.Ct. 28, 47 L.Ed. 79 (1902).

In *Gori, supra*, the Supreme Court found that the trial judge, in declaring a mistrial, was acting according to his convictions in protecting the rights of the accused. The Court declined "to pass an independent judgment upon the propriety of the mistrial", and held that "where it clearly appears that a mistrial has been granted in the sole interest of the defendant", retrial is not barred. 367 U.S. at 367, 369, 81 S.Ct. at 1525, 1527.

In *Scott v. United States*, 91 U.S.App. D.C. 232, 202 F.2d 354, *cert. den.*, 344 U.S. 879, 73 S.Ct. 176, 97 L.Ed. 681 (1952), the retrial of the defendant did not violate the double jeopardy provision of the Fifth Amendment. The trial court indicated that it had erred when it permitted an associate to assist the attorney representing three of the defendants. Because of the resulting prejudice to the defendants, a mistrial was declared *sua sponte.*

The defendant cites the plurality opinion in *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), for the proposition that:

Reprosecution after a mistrial has *unnecessarily* been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action. (Emphasis added). 400 U.S. at 483, 91 S.Ct. at 556.

However, the dissent clearly stated the problem:

The real question is whether there has been an "abuse" of the trial process resulting in prejudice to the accused, by way of harassment or the like, such as to outweigh society's interest in the punishment of crime. It is in this context, rather than simply in terms of good trial practice, that the trial judge's "abuse of discretion" must be assessed in deciding the question of double jeopardy. 400 U.S. at 492, 91 S.Ct. at 560.

■ A trial court should not declare a mistrial unless all available alternatives have been explored. *Downum, supra.* As stated previously, the Court spent several hours with counsel reviewing all of the possible alternatives facing the Court. The record shows that the Court made a "scrupulous" search for alternative means to deal with the difficulties. *Jorn, supra.*

Considering all the circumstances, the Court decided that there was a manifest necessity to declare a mistrial, "or the ends of public justice would otherwise be defeated." *Perez, supra* at 580. How else could the defendant have had the benefit of independent counsel (appointed at Government expense) to advise her as to all of the ramifications of Mr. Lipschitz continuing as counsel and, hence, being unavailable as a witness?

■ While it is true that it is the function of defense counsel to decide what witnesses should be called for the defense, it is the function of the Court to see that justice is accomplished. Federal Rule of Evidence 614(a) explicitly provides for the calling of witnesses by the Court.

A trial judge is not "a mere moderator"; his function extends to necessary assistance to "the inexperienced laymen in the [jury] box in finding the truth in the confusing conflict of contradictory evidence."

.        .        .        .        .

Thus we have recognized "the right of a trial judge to make proper inquiry of any

witness when he deems that the end of justice may be served thereby . . . . (footnotes omitted.)

*United States v. Barbour*, 137 U.S.App.D.C. 116, 117–118, 420 F.2d 1319, 1320–1321 (1969).

At the time the mistrial was disclosed, we were properly concerned about the direction in which the trial was moving. It was obvious that important evidence was not being exposed to the jury. It was not clear that the defendant fully understood the nature and importance of this evidence. The Court would have ignored its role if it stood idly by and allowed the trial to proceed to the potential detriment of the defendant.

If the Court would have called Mr. Lipschitz as a witness pursuant to Federal Rule of Evidence 614, the same issue as to the credibility of Mr. Lipschitz would have arisen. This was not raised as a possible solution by either counsel and would not have solved the problem faced at that time.

A defendant has a "valued right to have his trial completed by a particular tribunal", but defendant fails to quote the remainder of the sentence, that this right "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter, supra,* 336 U.S. at 689, 69 S.Ct. at 837.

The requirement of a manifest necessity was present in the instant case. We concluded that the trial could not continue without the defendant consulting independent counsel. Since a proper review of the record would take a period of time (longer than the life of the jury panel), a mistrial had to be declared.

Mr. Lipschitz could not have been removed as counsel at that late stage of the litigation since the Government's complete case had been presented and the defense had presented most of its case. Placing a new counsel in at this point of the trial would have also prejudiced Mrs. McKoy.

Likewise, if Mr. Lipschitz testified *and* continued to serve as counsel for Mrs. McKoy, his credibility would have been in question. The Court indicated as early as the January 24, 1978, hearing that it would not permit Mr. Lipschitz to both testify and be counsel.

Finally, had Mr. Lipschitz testified and remained as counsel, it would have been in apparent violation of the American Bar Association's Canon of Ethics and Disciplinary Rules. *See*, Canon Five; Disciplinary Rule DR 5–102.

In *Arizona v. Washington,* —— U.S. ——, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the Supreme Court found that the double jeopardy clause did not apply to a situation in which the judge exercised "sound discretion" when he declared a mistrial. Although this case involved alleged improper statements made during opening argument, the discussion of the review of the trial judge's actions is relevant.

> The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding.

—— U.S. at ——, 98 S.Ct. at 835, 54 L.Ed.2d at 734.

Likewise, the record in the instant case shows that there is a sufficient basis on the record to more than adequately justify a finding of manifest necessity.

Accordingly, the motion to dismiss the indictment was denied.