**R.D. PLUNKETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–94–041–CR.

Court of Appeals of Texas,
Waco.

Aug. 17, 1994.

Rehearing Denied Sept. 14, 1994.

James H. Kreimeyer, Belton, for appellant.

Thomas B. Sehon, Dist. Atty., Marlin, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

R.D. Plunkett was indicted for theft by check in Cause No. 6308 in Falls County. Allegations of witness and jury tampering arose prior to trial—but after the jury had been impaneled—and the court granted a mistrial *sua sponte*. Plunkett was reindicted in Cause No. 6627, and the case was transferred to Robertson County. He filed a pretrial writ of habeas corpus, asserting double jeopardy. The court denied the writ. He now appeals on four points, asserting that the court abused its discretion in declaring a *sua sponte* mistrial. We will affirm.

## POINTS OF ERROR

■ We note at the outset that Plunkett has not directed any point of error towards the order he has appealed from, *i.e.*, the order denying relief from confinement.[1] However, applying our liberal briefing rules, we will treat each point as attacking the correct order because it is clear that he complains that his continued confinement is illegal due to the court's prior action in granting a *sua sponte* mistrial. *See* TEX. R.APP. P. 74(p).

## FACTUAL BACKGROUND

Plunkett was indicted for felony theft by check in Cause No. 6308 in Falls County. *See* TEX.PENAL CODE ANN. § 31.06 (Vernon 1989 & Supp.1994). He was accused of paying Ray Walterscheid for hay with a bad check of approximately $2700. The court impaneled a jury on October 26, 1992, but recessed the jury until further direction of the court. The jury was reconvened November 11 but, due to unresolved legal questions, was released again subject to recall. That day, Plunkett was arrested on a new charge of tampering with a witness. The State moved to revoke his bond and, under Article I, section 11a, of the Texas Constitution, sought to have him held without bond. *See* TEX. CONST. art. I, § 11a.[2]

At the hearing on the motion to revoke bond, the State attempted to prove that Plunkett had "tampered" with Ray Walterscheid, the complaining witness. Billy Hill, a bail bondsman and acquaintance of Plunkett, testified that two days before the hearing Plunkett had borrowed $2800. Plunkett explained to Hill that "he had bought a lot of hay, but he needed to pay this man off before he got into some trouble." Hill wired the money to a Western Union in New Mexico. Hill then called a New Mexico phone number provided by Plunkett and spoke to a woman later identified as Walterscheid's mother. He informed the woman that the money was at the Western Union office. When she asked whether her son had agreed with the transaction, Hill told her he did not know anything. He left his name and number.

Walterscheid testified that during the week before the hearing, he had received anonymous calls from a man asking if he would accept the money Plunkett owed. Walterscheid told the man he would accept the money but needed to talk to the district attorney's office. The man would not leave his name or number but informed Walterscheid that he should not contact the district attorney. The man wanted Walterscheid to sign a non-prosecution agreement in exchange for sending the money. Walterscheid refused.

Plunkett testified that he did not make the anonymous calls to Walterscheid. He did

---

1. Assertions of former jeopardy commonly arise on direct appeal, but may also form the basis of a writ of habeas corpus. *Ex parte Rathmell*, 717 S.W.2d 33, 34 (Tex.Crim.App.1986).

2. A person accused of a felony who has two prior felony convictions or is accused of committing a felony while on bail for a prior felony for which he has been indicted may, after a hearing and upon evidence of substantial guilt, be denied bail pending trial.

borrow money to make an attempt to pay the bill he owed Walterscheid after his attorney had advised him that there was nothing illegal in paying the money he owed. Plunkett denied talking to any jurors. The court revoked Plunkett's bond and ordered him held without bond.

After Plunkett was removed to the county jail, a conference was held in chambers between his attorney, the prosecutor, and the judge. Plunkett's attorney re-urged his motion to withdraw as counsel:

MR. HUNT: Your honor, at this time, out of the presence of the jury and after the defendant has been placed in jail without bond, I, Russell Hunt, as counsel for the defendant will once again renew my motion that had been previously made to withdraw as counsel for the Defendant. In the past I have based my motion primarily on Rule 1.15 Subsection B5, which is failure to pay fines and fees—I'm sorry—fees to counsel. At this time, I would amend that and renew it but add Subsection B Subparagraphs 2, 3, 4 and 5, which say, in summary, that the client persists that I want—that I shall withdraw because the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes may be criminal or fraudulent, and the client has used the lawyer's services to perpetuate a crime of fraud, and the client insists upon pursuing an objective that the lawyer considers repugnant as well as Subparagraph B5, which is failure to pay fees. Although, since the last time I talked to the Court, the Defendant has paid an additional $2,000. This objection in the motion to withdraw is not primarily on fees although that's a secondary motive. The previously stated things are far more important to me.

Because of attorney/client privilege and because I have an obligation to protect my client because he's still my client, I don't feel that I can tell the specifics to the Court although I would like to represent to the Court that I'm doing it and give the Court a hypothetical that would come up with a very analogous situation to the reason that I have to withdraw.

If hypothetically speaking, the client was to come to me and tell me, on the day before trial, that not just one but three jurors had been bought and paid for and that the outcome of the trial was guaranteed to be at least a hung jury, and if the client went further, hypothetically speaking, and told me that a certain family member of the client had, in fact, paid someone an amount—hypothetically speaking let's say—$10,000 in order to assure that one of the jurors who has reason to be antagonistic toward some of the State or State's witnesses and has paid that person in order to make certain that there is going to be a hung jury, if hypothetically speaking that was to come to the attorney's attention, I think it would be the attorney's obligation to inform the Court and to absolutely say, "I cannot participate in this fraud [on the] court, and I seek to withdraw."

I would represent to the Court that there is an analogous situation that I take very seriously and think absolutely has basis in fact, and for that reason, I would ask the Court to grant permission to withdraw.

THE COURT: Mr. Sehon, any position the State has to the motion to withdraw?

MR. SEHON: The State has no objection to it under the [Canons] of Ethics. We feel that the Court has no choice but t[o] grant Mr. Hunt's motion.

THE COURT: Motion is granted. Mr. Hunt, if you will, send me a little order so we'll have something in the file. I'll give you the mailing address in a few minutes. All right.

The court allowed Mr. Hunt to withdraw from the cause. On November 30, the court filed its own "Order Granting Mistrial Upon Sua Sponte Motion." The court's order declared that, "based upon the record and the affidavit attached to this order, manifest necessity dictates that a mistrial be declared." The court found that three or more jurors were absolutely disqualified, having been approached by unauthorized persons on behalf of Plunkett; that the presence of the disqual-

ified persons on a jury were grounds for manifest necessity; that the court had discretion to determine whether the jurors' bias or prejudice was to such a degree as to disqualify them; and that the juror contact by the unauthorized person resulted in harm. The court further found that, giving due consideration to Plunkett's double jeopardy rights, there were no lesser alternatives to declaring a mistrial.

Attached to the order were two affidavits. The first was from Benny Bender, a deputy sheriff of Falls County. Bender's affidavit stated that on November 11 he had been escorting Plunkett by car to the Robertson County jail. Plunkett, to the best of Bender's recollection, had stated, "I don't know about tampering with a witness. I didn't even talk to the man. But I got it done." The second affidavit was from Tom Sehon, prosecuting attorney for Falls County. The affidavit stated in part:

On or about the 11th day of November, 1992, I received information from a credible source that three jurors previously selected for the trial herein have been contacted on behalf of Defendant R.D. Plunkett; that substantial amounts of money were paid to one or more of these jurors; and that a hung jury was guaranteed.

I have had many conversations with the credible source over a period of years, and the source has always been truthful and accurate in representations to me.

Unless the jury in this case were discharged, it would be impossible to investigate thoroughly the possibilities of corrupt conduct involving the jury. If the same jury remained impaneled, neither this office nor agents of this office would be able to make inquiries of any of the jurors themselves.

Following the mistrial, Plunkett was reindicted in Cause No. 6627, and the case was transferred to Robertson County. Plunkett filed a writ of habeas corpus asserting his double jeopardy claim. On January 31, 1994, the court held a hearing on the writ. Plunkett introduced as exhibits the indictments in Cause Nos. 6308 and 6627 from Falls County, the docket sheet in Cause No. 6308, the statement of facts from the November 11, 1992, hearing, the court's *sua sponte* order granting a mistrial, and the order granting Hunt's request to withdraw as counsel. The State did not introduce any evidence. Plunkett filed a brief in support of his position with the court after the hearing.

The court made Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

- Plunkett was indicted in Cause No. 6308 for theft of property over $750 but less than $20,000; he entered a plea of "not guilty"; a jury was impaneled and sworn on October 26, 1992, but released to return at the court's discretion; and the jury was called back on November 11 and again released subject to recall.

- On November 11, 1992, Plunkett was arrested on a new charge of tampering with a witness; after a hearing and a substantial showing by the State that a crime had been committed, bail was denied and Plunkett was incarcerated; and after Plunkett had been taken to jail, his attorney, Russell Hunt, was allowed to withdraw as counsel.

- The hearing on the motion to withdraw was *in camera* with only the judge, the prosecutor, and Hunt present; Plunkett was not present; Hunt stated hypothetically that the client had paid jurors to guarantee a hung jury; and the court found the hypothetical remarks were attributable to Plunkett.

- On November 30, 1992, the court entered an "Order Granting Mistrial Upon Sua Sponte Motion" based on the record and affidavits having found manifest necessity; the jury was discharged; and Plunkett neither waived his presence nor consented to the order and was without counsel on that date.

- On December 28, 1993, Plunkett was indicted in Cause No. 6627 for the exact same transaction and event that gave rise to the indictment in Cause No. 6308.

## CONCLUSIONS OF LAW

- Plunkett's actions, as related by Hunt, constituted a "sudden and overwhelming

emergency beyond the control of court and unforeseeable ... where, due to circumstances beyond control of parties it no longer [became] possible to conduct trial or to reach a fair result based on the evidence, *i.e.,* manifest necessity." BLACK'S LAW DICTIONARY 963 (6th ed. 1990).

- The affidavits of Bender and Sehon corroborated Hunt's statements that the jury was not impartial and that three jurors had already prejudiced the merits of the case.
- The court had evidence before it that there was gross misconduct on the part of Plunkett in contacting jurors; the court had "multiple sources of suspicion" indicating that the ends of public justice would be defeated by the continued empanelment of the jury.
- Manifest necessity for a mistrial permitting a second trial includes a tainted jury.
- Retrial is not barred by double jeopardy because the mistrial was attributed to Plunkett.
- Taking all circumstances into consideration, there was manifest necessity for declaring the mistrial, or the ends of public justice would otherwise be defeated.
- There were no less drastic alternatives available other than declaring a mistrial.

### MANIFEST NECESSITY

In his first two points, Plunkett argues that the court abused its discretion in declaring a *sua sponte* mistrial because the hypothetical statements of Hunt were not probative evidence. The court's order declaring a mistrial and its findings of fact indicate that the court took into consideration both Hunt's statements, which the court found were attributable to Plunkett, and the affidavits of Bender and Sehon.

■ Once jeopardy attaches, as it did for Plunkett when the jury was impaneled and sworn, he possessed a valued right to have his guilt or innocence determined before the first trier of fact. *See Torres v. State,* 614 S.W.2d 436, 441 (Tex.Crim.App. [Panel Op.]

1981). An exception to this rule exists when the defendant consents to a retrial or if retrial is mandated by some form of manifest necessity. *Id.; Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Plunkett did not consent to the retrial; thus, the propriety of a retrial depends on the finding of manifest necessity.

■ A court may declare a *sua sponte* mistrial "whenever, in [its] opinion, taking all circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.... [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Torres,* 614 S.W.2d at 442. Because a mistrial affects a constitutionally protected right, the reviewing court must determine that the court did not act irrationally or irresponsibly, and that the mistrial order reflects the exercise of sound discretion. *Arizona,* 434 U.S. at 515, 98 S.Ct. at 835. The exercise of sound discretion normally requires the court to consider less drastic alternatives to a mistrial and to give adequate consideration to the defendant's double jeopardy right before declaring a mistrial. *Torres,* 614 S.W.2d at 442; *Harrison v. State,* 788 S.W.2d 18, 22 (Tex.Crim. App.1990).

■ Manifest necessity is more easily answered in some cases than others. *Arizona,* 434 U.S. at 508–09, 98 S.Ct. at 831–32. If a mistrial is declared because of prejudicial impact on the jury due to some impropriety, the court's decision is entitled to great deference. *Id.* However, if some intentional misconduct of the prosecutor is the basis for the mistrial, the court's decision is subject to the strictest scrutiny. *Id.; Ex parte Brown,* 839 S.W.2d 164, 166 (Tex.App.—Fort Worth 1992, writ granted) (when mistrial declared due to unavailability of critical prosecution evidence, trial court action is reviewed with the strictest scrutiny).

■ Under Rule 1.05 of the Texas Disciplinary Rules of Professional Conduct:

(c) A lawyer may reveal confidential information:

(4) When the lawyer has reason to believe it is necessary to do so in order to comply with a court order, a Texas Disciplinary Rule of Professional Conduct, or other law.

.　　.　　.　　.　　.

(7) When the lawyer has reason to believe it is necessary to do so in order to prevent the client from committing a criminal or fraudulent act.

(8) To the extent revelation reasonably appears necessary to rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services had been used.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(c)(4), (7), (8) (1991), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1994) (STATE BAR RULES art. X, § 9). The comments to Rule 1.05 state that a lawyer has professional discretion, based on reasonable appearances, to reveal both privileged and unprivileged information in order to prevent the client's commission of any criminal or fraudulent act. *Id.* cmt. 13. If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw. *Id.* cmt. 21. Rule 3.03 states that a lawyer may not knowingly fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act. *Id.* 3.03(a)(2) (1989).

■ Hunt was obligated to inform the court of his belief that the jury had been compromised by his client. The affidavits of Bender and Sehon provided some corroboration of Hunt's statements. The court had "multiple sources of suspicion" that the events leading up to the mistrial were attributable to Plunkett.

The basis of the mistrial was the alleged impropriety of Plunkett, not the State. Although the better course of action would have been to question the individual jurors to determine if they had, in fact, been contacted,[3] we defer to the court's decision to grant

the mistrial. *See Arizona,* 434 U.S. at 514–16, 98 S.Ct. at 834–36. We cannot say that the court abused its discretion. We overrule points one and two.

## ABSENCE OF DEFENDANT

In point three, Plunkett complains that the court abused its discretion in granting the mistrial when he was not present at the hearing to withdraw on which the mistrial was based. In point four, he complains that the court abused its discretion in hearing and granting Hunt's motion to withdraw while he was not present.

■ Plunkett cites article 33.03 of the Code of Criminal Procedure which states in part:

In all prosecutions for felonies, the defendant must be personally present at the trial ... provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

TEX.CODE CRIM.PROC.ANN. art. 33.03 (Vernon 1989). Plunkett was not present at the in-chambers conference. Because he was entitled to be present, the court erred in proceeding without him. We then address the question of whether the error was "harmless."

■ The Court of Criminal Appeals has recently elaborated on the harmless-error review when a trial court has erred in conducting proceedings in the defendant's absence. *Adanandus v. State,* 866 S.W.2d 210 (Tex. Crim.App.1993). Prior to Rule 81(b)(2), when the presence of the defendant did not bear a "reasonably substantial relationship to the opportunity to defend," no harm was shown by his absence. *Id.* at 219 (citing *Cooper v. State,* 631 S.W.2d 508, 512 (Tex. Crim.App.1982); *Mares v. State,* 571 S.W.2d 303, 307 (Tex.Crim.App.1978)).

The "reasonably substantial relationship" rule seeks to determine the effect of the

---

3. *See, e.g., McMahon v. State,* 582 S.W.2d 786, 793 (Tex.Crim.App.1978), *cert. denied,* 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1979) (juror who was offered five hundred dollars by anony-mous telephone caller if she would "hang the jury" immediately contacted the court and evidentiary hearing was held).

defendant's absence on the advancement of his defense as opposed to Rule 81(b)(2), which seeks to determine the effect of the defendant's absence on the outcome of the guilt/innocence or punishment proceedings. *Adanandus,* 866 S.W.2d at 219–20. In light of the distinct focus of the two tests, the Court held in *Adanandus* that Rule 81(b)(2) does not supplant the reasonably substantial relationship test, but rather should be applied in addition thereto. *Id.* at 220.

 The remedy under either test—assuming the reviewing court finds harm—is reversal. However, we are not reviewing a trial on the merits; rather, we are reviewing the court's denial of relief on Plunkett's writ of habeas corpus. Thus, Rule 81(b)(2) does not apply. Using the "reasonably substantial relationship" test, we cannot say that Plunkett's absence at the hearing on the motion to withdraw affected his opportunity to defend himself on the charges of theft by check. *See Cooper,* 631 S.W.2d at 512. We overrule points three and four.

We affirm the order denying relief.