**Ex parte Kurry Norman JAMES.**

**No. 07–97–0319–CR.**

Court of Appeals of Texas,
Amarillo.

April 15, 1998.

James D. Durham, Amarillo, for appellant.

Rebecca King, Dist. Atty., John L. Owen, Asst. Dist. Atty., Amarillo, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

This appeal arises from the denial of a pretrial application for writ of habeas corpus in a murder prosecution. As we will recite in more detail later, it concerns a trial juror who, after having indicated affirmatively that she could consider the full range of punishment attached to the crime, after being sworn and empaneled as a member of the trial jury, and after an overnight break, recanted and admitted to the court and counsel that she could not consider the full range of punishment specified for the crime. The question presented is whether, after a mistrial was declared, the State is jeopardy-barred from prosecuting appellant Kurry Norman James for murder. For reasons we later discuss, we affirm the trial court's denial of the writ of habeas corpus.

On August 18, 1996, appellant was originally indicted by the Potter County Grand Jury for murder. The case was called for trial and a trial jury was sworn-in and empaneled on October 15, 1996, after an extensive voir dire examination of the jury panel was conducted by both sides, including questions as to whether they could consider the full range of punishment attached to the crime. After the selection of the jury, the case was recessed to begin trial the next day. On the morning of the next day, however, one of the empaneled jurors, Deborah J. Strong, contacted the trial judge and informed him that she did not feel she could serve as a juror. After receiving that avowal, the trial judge had her take the witness stand and gave each counsel the opportunity to examine her. Because our decision is based upon fact-intensive issues, we set out the ensuing colloquy:

The Court: Okay, let's get the—just have her (the juror) have a seat in the witness stand.

(Juror entered the courtroom).

The Court: Mrs. Strong, when we got here this morning, my staff indicated that you wanted to talk to me. Since we have already read the indictment and we are ready to begin the trial, it is necessary that this be on the record.

Juror Strong: Okay.

The Court: What do you want to talk to me about?

Juror Strong: I didn't have any of this thought process, because, I don't know, I guess I didn't really know that I was going to be selected, of course. And once it happened, I drove off, and I just began to think about me being a part of—in the event that he is found guilty, beyond a reasonable doubt, I would be a part of that sentencing. And I don't feel comfortable doing that, whatsoever.

I just left a job at the Bill Clements Unit a month and a half ago, and it was very— for one of many different adjectives, disturbing for me, and it all just fit in, and tied in. I couldn't let you know sooner, because I didn't have the awareness of it sooner, until it came down to the reality that I was going to be selected, and be a part of that, in the event that that was the verdict. And I just wanted to let you know that. You know, if I still—

The Court: Mrs. Strong, I'm going to allow the defense and state attorneys to ask you some questions very similar to what we did on voir dire yesterday. Who wants to proceed first?

Mr. Murphy (the prosecutor): Doesn't matter.

The Court: Mr. Durham.

Mr. Durham (defense counsel): Mrs. Strong, certainly no one is—and your phraseology is good, "in the event he is found guilty," which shows you have an open mind. And I appreciate that. And in that regard, we have spent a full day in voir dire, a lot of the time of the panel, and of the jurors selected, and of the court, but we want to be cautious to protect Kurry's rights.

And, essentially, the inquiry on the question that you raise would be whether or not you could consider the entire range of punishment. The range of punishment is five years to life. We are not asking you to commit that you would go the low end, we are not asking you to commit that you would go the high end, but you would have to be able to say, in this case, I would consider the entire range of punishment.

I could send someone to prison for life, I could sentence someone for five years in a murder case. If you can do that, regardless of how uncomfortable you are, you would be a qualified juror.

If you cannot do that, then, in fairness to the state, because I have the impression you are thinking low, and I may be wrong, and in fairness to the defendant, because he is entitled to the consideration of the full range, in case you are thinking high, and he wants low in the event of finding of guilt, the ultimate question is, can you consider the entire range of punishment? If you think not, then you are not qualified to be on this jury.

Juror Strong: No sir, I could not. And I apologize for any convenience [sic] to everyone. Again, I had no idea until leaving here, yesterday, that if that were a possibility, I could not do that.

Mr. Durham: I'll pass.

Mr. Murphy: State has no questions, Your Honor I believe that was unequivocal.

The Court: The court is then open to a motion, at this time.

Mr. Murphy: The state would move for a mistrial, based upon the answers.

Mr. Durham: For the record, I object to a mistrial. I believe jeopardy has attached.

Mr. Murphy: Then we will withdraw our motion. Your Honor, at this time, the state feels like there is an unequivocal statement that this juror, yesterday, made a statement she could consider the full range. She has made an unequivocal statement she could not. She is not qualified, and for lack of a better phraseology, that is jury misconduct as far as the state's concerned.

It was my understanding that we were all in agreement, that if that was the unequivocal (sic), that it would be a mistrial, it would be subject to a mistrial.

(Pause)

The state will renew its motion, Your Honor, and ask the court to grant a mistrial.

Mr. Durham: I don't want the state to believe I'm laying behind a log.

The Court: We understand that.

Mr. Murphy: The state understands, too.

The Court: But this is the first time I have had this happen. I think this is a situation where Mrs. Strong has been very honest with us—

Mr. Durham: Oh, I have no quarrel with Mrs. Strong.

The Court: But let me finish. And I don't think there is any way that she could consider the entire range of punishment.

That being the case, and having had our discussions in chambers for some time, then I will grant the state's motion.

The trial court declared a mistrial on October 16, 1996. On December 19, 1996, appellant was re-indicted for murder. Appellant then filed a pretrial writ of habeas corpus asserting that jeopardy attached to the first trial, and according to the principles stated in *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the State is barred from re-prosecuting him for the same offense because there was no showing that the mistrial was granted out of manifest necessity.

In the seminal case of *Ex parte Brown*, 907 S.W.2d 835, 838–39 (Tex.Crim.App.1995), the court collated the principles the Supreme Court has decided are applicable in deciding a question such as the one before us. Omitting the cases cited by the court in support of its collation, we briefly recount those principles. The Fifth Amendment to the Federal Constitution prohibits a state from twice putting a defendant in jeopardy for the same offense. Jeopardy attaches when a jury is empaneled and sworn. Consequently, the general rule is that if, after the defendant is placed in jeopardy, the jury is discharged without reaching a verdict, double jeopardy will bar retrial. An exception to this rule is made if the defendant consents to a retrial or if a retrial is mandated by some form of *manifest necessity*. Thus, where *manifest necessity* exists to declare a mistrial, the constitutional prohibition against double jeopardy is not implicated and retrial is permitted.

The *Brown* court further noted that although the Supreme Court has declined to formulate precise rules based upon categories of circumstances in which manifest necessity exists, it has said that a trial judge's discretion to declare a mistrial based on manifest necessity is limited to very extraordinary and striking circumstances. Circumstances in which the Supreme Court has found manifest necessity existed to discharge a jury without the defendant's consent have included: where a jury is unable to arrive at a verdict after considerable deliberation; where bias of a juror is discovered after jeopardy attaches; and where tactical necessity on the battlefield necessitates moving the tribunal. Moreover, the *Brown* court observed that in *Alvarez v. State*, 864 S.W.2d 64, 66 (Tex.Crim.App.1993), it had held there was manifest necessity to declare a mistrial in a case where errors made during voir dire would automatically result in reversal on appellant. Summing up, the court concluded that as a general rule, manifest necessity exists where the circumstances render it impossible to reach a fair verdict, where it is impossible to proceed with trial, or where the verdict would be automatically reversed on appeal because of trial error.

Even in cases involving manifest necessity, the *Brown* court also cautioned that before declaring a mistrial, the trial judge is required to consider and rule out less drastic alternatives prior to granting a mistrial. *Ex parte Brown*, 907 S.W.2d at 839–40. In pursuance of that obligation, the court continues, a trial judge must cautiously and purposefully assess which of the alternatives best champions the defendant's interest in having his trial concluded in a single proceeding along with society's interest in impartial trials designed to reach fair verdicts. In that connection, in the hoary case of *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891), the Court had occasion to consider a plea of double jeopardy in a case involving bias on the part of a juror not evident at the beginning of the trial. In discussing the determination of manifest necessity in rela-

tion to double jeopardy questions, the Court opined:

> There can be no condition of things in which the necessity for the exercise of this power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject, to such bias or prejudice as not to stand impartial between the government and the accused.

142 U.S. at 152, 12 S.Ct. at 172, 35 L.Ed. at 971.

In support of his proposition that he is entitled to habeas corpus relief, appellant cites two cases decided by this court, *Pfeffer v. State*, 683 S.W.2d 64 (Tex.App.—Amarillo 1984), *pet. ref'd*, 687 S.W.2d 768 (Tex.Crim. App.1985) (juror disqualified because of conviction of Class C misdemeanor theft); and *Ex parte Smith*, 817 S.W.2d 797 (Tex.App.—Amarillo 1991, no pet.) (juror had prior felony conviction and was under indictment for a felony offense). He posits that those cases stand for the proposition that after a juror is empaneled and sworn, a mistrial may not be declared unless the juror is shown to be absolutely disqualified. However, in *Pfeffer*, in pertinent part, we recognized the settled rule that jeopardy attaches when a jury is empaneled and sworn, and an accused is entitled to have that particular jury determine the verdict unless a new trial is mandated by manifest necessity, such as an absolute disqualification of a juror. 683 S.W.2d at 65 (citing *Torres v. State*, 614 S.W.2d 436, 441 (Tex.Crim.App.1981)) (manifest necessity arising generally), and *Ex parte Bronson*, 158 Tex.Crim. 133, 254 S.W.2d 117, 121 (1952) (manifest necessity arising from absolute disqualification of juror). In *Ex parte Smith*, we reemphasized the holding in *Pfeffer*. 817 S.W.2d at 799. Thus, this court has expressly recognized that manifest necessity for a mistrial may exist for reasons other than the swearing in of an absolutely disqualified juror.

At the time the trial judge was faced with his decision, *Ex parte Hernandez* was the most nearly analogous case decided by our state court of last resort in criminal matters. 906 S.W.2d 931 (Tex.Crim.App.1995), *overruled on other grounds, Hatch v. State*, 958 S.W.2d 813 (Tex.Crim.App.1997). In that case, after trial had commenced, the State had completed its evidence and the first defense witness had testified, a trial juror approached the judge and informed him that he "wished to be disqualified as a juror as he knew the appellant's father from grade school and high school." *Id.* at 931–32. Defense counsel advised the trial judge that the defense had no objection to either excusing the juror and proceeding with 11 jurors or allowing the juror to remain on the jury. *Id.* at 932. Refusing to proceed with only 11 jurors, the State moved for a mistrial. *Id.* The trial judge determined that the juror had become biased and must be excused. *Id.* Because that would leave less than 12 jurors, he determined that a manifest necessity existed for mistrial and granted the State's motion. *Id.* Asserting his retrial was jeopardy-barred, the defendant filed a writ of habeas corpus which was denied by the trial court. *Id.* Both the court of appeals and the court of criminal appeals affirmed. *Id.* at 932–33. En route to that decision, the court concluded that because article 36.29(a) of the Texas Code of Criminal Procedure provided that a felony verdict may not be returned by less than 12 jurors unless a juror "may die or be disabled from sitting at any time before the charge of the court is read to the jury," and in that case the juror was not disabled within the purview of the statute, the defendant could not waive the twelve-juror requirement, and thus the trial court acted correctly in granting a mistrial. *Id.* at 932. Significantly, however, the court also concluded that the juror "became biased after the trial commenced and it was within the sound discretion of the trial judge to excuse him from the jury." *Id.* The situation before us, in which a juror has decided that she cannot follow the applicable law, is analogous to the biased juror considered by the *Ex parte Hernandez* court.

Subsequently, in *Hatch v. State*, the court revisited the question of whether a defendant

could waive the twelve juror requirement and, because of other statutory provisions, concluded that "a defendant may waive Article 36.29(a)'s requirement that not less than twelve jurors can return a verdict in a non-capital felony case," and overruled *Hernandez* to that extent. at 814. However, it did not discuss, nor did it overrule its prior holding that it was within a trial judge's sound discretion to excuse a juror who has demonstrated a bias after having been sworn as a trial juror.

Texas Constitution article 16, section 19 empowers the legislature to "prescribe by law the qualifications of grand and petit jurors." By the adoption of article 35.12 of the Texas Code of Criminal Procedure, the legislature has stated a juror is qualified if: 1) except for the failure to register, the juror is a qualified voter under the Constitution and laws of this State; 2) he or she has never been convicted of theft or any felony; and 3) is not under indictment or legal accusation for theft or any felony.[1] Under this record, the juror in question was not absolutely disqualified to serve as a trial juror.

■ In article 35.16 of the Texas Code of Criminal Procedure, the legislature has enumerated the various reasons for challenging a potential juror for cause. Both the State and the defendant are entitled to challenge any juror who has a bias or prejudice against any phase of the law upon which either party is entitled to rely. Tex.Code Crim. Proc. Ann. art. 35.16(b)(3) & (c)(2) (Vernon Supp. 1998). Thus, qualified prospective jurors must be willing to consider the full range of punishment applicable to the crime charged and a person who testifies unequivocally that he or she could not do so is properly the subject for a challenge for cause. *Banda v. State,* 890 S.W.2d 42, 55 (Tex.Crim.App. 1994), *cert. denied,* 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). Thus, there is no question that if the juror had revealed during voir dire that she was unable to consider the full range of punishment, she would have been subject to challenge for cause by either party.

Assuming that Juror Strong's reluctance was related to her inability to assess more than a minimum sentence, appellant argues that neither the State nor the trial court made any effort to determine whether her feelings were such that, no matter what the facts, she could never assess the minimum punishment. He also argues that the trial court made no effort to determine whether the parties could agree to go to trial with Strong.

■ Under the colloquy which we have set out in detail, the juror was quite firm in her decision that she could not consider the full range of punishment. It appears the matter had concerned her to the extent that she sought out the trial judge to let him know of that inability. We cannot fault the trial judge, who was present and had the obvious opportunity to observe the juror's demeanor and bearing and hear her testimony, for determining within the boundaries of the sound discretion he is allowed to use, that the witness was sincere in stating she could not consider the full range of punishment. It is also quite clear from this record that the State would not agree to continue the trial with Strong as a juror. It is equally clear that appellant would not agree to waive the twelve juror requirement and continue the trial without the presence of Strong.

Under these facts, the trial judge was faced with the choice of continuing the trial with a juror who would have been challenged for cause had she revealed her inability to consider the full range of punishment, or declaring a mistrial. There were simply no less drastic alternatives for him to consider. In making his decision, he was bound by the basic principle that both sides are entitled to a jury that would follow the instructions of the court, including the range of punishment in the case of a guilt finding, no more and no less. Under this record, we cannot fault him for his decision that a manifest necessity existed which justified the declaration of a mistrial. Our conviction that this is true is strengthened by the decision in *Ex parte Hernandez* that the juror who decided after being empaneled, that his acquaintance with

---

1. Tex.Code Crim. Proc. Ann. art. 35.12 (Vernon 1989).

a parent of the defendant would affect his verdict, was properly excused.

Summarized, we hold that under the facts of this case, the trial judge did not exceed his sound discretion in deciding that a manifest necessity existed to declare a mistrial. Accordingly, the State was not jeopardy barred from retrying appellant and the trial court did not err in refusing habeas corpus. The judgment of the trial court is affirmed.