**James PARRISH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–01237–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 15, 2001.

---

Rosa Alexander Eliades, Houston, for appellants.

Calvin A. Hartmann, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices HUDSON and AMIDEI.[1]

## OPINION

MURPHY, Chief Justice.

Appellant, James Parrish, appeals the denial of pretrial habeas corpus relief. Appellant stands charged with the misdemeanor offense of driving while intoxicated. After a jury was selected to hear appellant's case, but before testimony began, the trial court granted a mistrial on its own motion. Subsequently, appellant filed an application for writ of habeas corpus alleging double jeopardy bars retrial of the charge. After a hearing, appellant's writ was denied; appellant appeals therefrom. The question presented is whether, after a mistrial was declared, the State is jeopardy-barred from prosecuting appellant for driving while intoxicated. For reasons we later discuss, we affirm the trial court's denial of the writ of habeas corpus.

## BACKGROUND

During the hearing on appellant's application for writ of habeas corpus, the court admitted in evidence Defendant's Exhibit One, a transcript of a dialogue between the trial judge, the prosecutor, the defense attorney and juror number fifteen. The court questioned the juror on the record after being alerted by the court bailiff that the juror made certain statements in violation of the court's instructions to the jury. The statements were purportedly made in the presence of other jurors, while juror fifteen was being escorted into the jury room by the bailiff, after the jury was sworn, but prior to any testimony being adduced. The court questioned the juror as follows:

Q. Did you make any comments to the other jurors that you were the wrong person to have on this jury because you would be sending this person home?

A. I don't think it's fair that no blacks are in here, and he is black.

The court continued:

Q. Aren't you making the statement that you can't be fair to one side or the other in this case?

A. Maybe not.

Appellant's attorney questioned the juror as follows:

Q. Do you understand that you have to follow the law once you swear to take an oath to follow the law?

A. Right.

Q. Are you maintaining that you will not be able to follow the law in this case or are you—The Judge needs to know.

A. As long as I understand everything, I can. But if there's things that I don't understand, then it's impossible.

The court inquired:

Q. Did you say that you were going to cut this gentleman—that you were going

1. Former Justice Maurice Amidei sitting by assignment.

to send this man home as soon as you walked in the jury room?

A. I said that because he's pretty old. He's an elderly man. I thought maybe, you know, staying home with no driving or nothing, he would do okay.

The prosecutor asked one question of the juror:

Q. Ms. Rodriguez, did you also say that you didn't think it was fair that there were no black jurors on this panel and for that reason you would not be fair?

A. Oh, yes, I did say that. I wonder why there is no black people on the jury.

The State asked the court to grant a mistrial on its own motion based on manifest necessity because of juror misconduct. Defense counsel argued against a mistrial, requesting juror fifteen remain on the jury, or in the alternative, requesting a "mini-panel" be summoned for additional voir dire examination so that one substitute juror could be selected. The court granted a mistrial based on manifest necessity. The court announced at the writ hearing that it had been ready to proceed by impaneling a new jury the day following the mistrial; however, the writ was filed on that date and no trial ensued. At the conclusion of the application hearing on the writ of habeas corpus, the court denied appellant relief.

## BURDEN OF PERSUASION

 The burden of persuasion in a writ of habeas corpus is on the applicant to prove his allegations by a preponderance of the evidence. *See Ex Parte Lafon,* 977 S.W.2d 865, 867 (Tex.App.—Dallas 1988, no pet.); *Guzman v. State,* 841 S.W.2d 61, 67 (Tex.App.—El Paso 1992, pet. ref'd). In reviewing the trial court's decision, we view the evidence in the light most favorable to the ruling and accord great deference to the trial court's findings and conclusions. *See Lafon,* 977 S.W.2d at 867. Absent a clear abuse of discretion, we accept the trial court's decision whether to grant the relief requested in a habeas corpus application. *See Ex parte Ayers,* 921

S.W.2d 438, 440 (Tex.App.—Houston [1st Dist.] 1996, no pet.).

## DOUBLE JEOPARDY

 The Fifth Amendment to the United States Constitution prohibits a State from twice putting a defendant in jeopardy for the same offense. *See Ex parte Little,* 887 S.W.2d 62, 64 (Tex.Crim. App.1994) (*citing Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978)). Jeopardy attaches when a jury is impaneled and sworn. *See id.* Consequently, as a general rule, if, after the defendant is placed in jeopardy, the jury is discharged without reaching a verdict, double jeopardy will bar retrial. *See Wade v. Hunter,* 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957); *Alvarez v. State,* 864 S.W.2d 64, 65 (Tex.Crim. App.1993). An exception to this rule is made if the defendant consents to a retrial, or if a retrial before a new jury is mandated by some form of manifest necessity. *See Torres v. State,* 614 S.W.2d 436, 441 (Tex.Crim.App.1981). Accordingly, where manifest necessity exists to declare a mistrial, the constitutional prohibition against double jeopardy is not implicated. *See Little,* 887 S.W.2d at 65.

 While the Supreme Court has declined to formulate rules based on categories of circumstances in which manifest necessity exists, a trial judge's discretion to declare a mistrial based on manifest necessity is limited to "very extraordinary and striking circumstances...." *See Little,* 887 S.W.2d at 65. As a general rule, manifest necessity exists where the circumstances render it impossible to reach a fair verdict, where it is impossible to proceed with trial, or where the verdict would be automatically reversed on appeal because of trial error. *See Ex Parte James,* 967 S.W.2d 498, 500 (Tex.App.—Amarillo 1998, pet. ref'd). Not only is "necessity" the operative word, but there must be a "high degree" of necessity that the initial

trial come to a premature end. *See Arizona*, 434 U.S. at 516, 98 S.Ct. at 835. The trial court must give adequate consideration to the defendant's right not to be subjected to double jeopardy. *See Torres*, 614 S.W.2d at 442. Before granting a mistrial on grounds of manifest necessity, a trial court must determine whether alternative courses of action are available and, if so, choose one that is less drastic than a mistrial. *See Brown v. State*, 907 S.W.2d 835, 839 (Tex.Crim.App.1995). The trial court's objective in those circumstances is to choose the alternative that best preserves the defendant's right to have the trial completed before a particular tribunal, that is, the jury that has already been seated. *See id.*

■ As the reviewing court, we must determine whether the trial judge acted irrationally or irresponsibly, and whether the mistrial order reflects the exercise of sound discretion. *See Ledesma v. State*, 993 S.W.2d 361, 365 (Tex.App.—Fort Worth 1999, pet. ref'd). Moreover, if the record shows that the trial judge exercised sound discretion in finding a manifest necessity for a retrial, the judge's *sua sponte* declaration of a mistrial is not incorrect just because the reviewing court might have ruled differently. *See id.* There can be no condition in which the necessity for the exercise of this power is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused. *See James*, 967 S.W.2d at 501 (*citing Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891)).

Under the colloquy which we have set out in detail above, juror fifteen was quite firm in her decision that she could not be fair and impartial. We cannot fault the trial judge, who was present and had the obvious opportunity to observe the juror's demeanor and bearing and hear her testimony, for determining within the boundaries of the sound discretion he is allowed to use, that the witness was sincere in stating she could not be fair to the State. In giving "almost total deference" to the trial court's resolution of issues turning upon an evaluation of credibility and demeanor, we in essence view the evidence in the light most favorable to the trial court's findings (or ruling, if there are no pertinent findings). *See Quinn v. State*, 958 S.W.2d 395, 402 (Tex.Crim.App.1997).

■ It is also quite clear from this record that the State would not agree to continue the trial with juror fifteen as a juror. It is equally clear that appellant would not agree to waive the six juror requirement and continue the trial with the remaining five jurors. The trial judge heard the unwilling juror's sworn testimony that she could not be fair and impartial in appellant's trial. After considering the factual circumstances facing the trial court at that moment, the judge was unable to think of an alternative less drastic than to declare a mistrial. Manifest necessity is more easily answered in some cases than others. *See Arizona*, 434 U.S. at 508–09, 98 S.Ct. at 831–32. If a mistrial is declared because of prejudicial impact on the jury due to some impropriety, the court's decision is entitled to great deference. *See Plunkett v. State*, 883 S.W.2d 349, 354 (Tex.App.—Waco 1994, pet. ref'd). In *Arizona v. Washington*, the Supreme Court emphasized that in the context of a declaration of mistrial involving an assessment of the prejudicial impact upon the jury of some impropriety, the trial judge's decision is entitled to great deference; whereas, the strictest scrutiny is employed when some intentional misconduct by the prosecutor is the basis for the mistrial. As the instant case presents us with the former situation, with no misconduct attributable to the prosecution, we accord great defer-

ence to the trial court's decision. *See Arizona,* 434 U.S. at 514–516, 98 S.Ct. at 834–836.

Under the facts in this case, the trial judge was faced with the choice of continuing the trial with a juror who would have been challenged for cause had she revealed her inability to be fair during voir dire examination, or declaring a mistrial. There were simply no less drastic alternatives for him to consider. In making his decision, he was bound by the basic principle that both sides are entitled to a jury that would follow the instructions of the court. Under this record, we cannot fault him for his decision that a manifest necessity existed which justified the declaration of a mistrial.

Appellant's argument that the court neglected to consider the less drastic alternative of summoning a "mini-panel" from which to conduct voir dire and select one juror to replace the biased juror fifteen is without merit. Such a procedure has only been authorized in situations where a juror was excused *before* being sworn. *See Williams v. State,* 631 S.W.2d 955 (Tex. App.—Austin 1982, no pet.) ( holding the trial court's production of five extra people from the central panel for voir dire examination to replace a disabled juror was authorized); *Glivens v. State,* 918 S.W.2d 30, 32 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd) (holding the procedure employed by the court to replace a juror who was excused before being sworn was within the trial court's authority wherein the court, instead of having an entirely new venire summoned, brought in for voir dire twelve new venirepersons; each side received three peremptory strikes, and one replacement juror was promptly selected). However, no such procedure is authorized for replacing a juror once the jury panel has been sworn.

As the Supreme Court has articulated, "[n]either party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, 'the public's interest in fair trials designed to

end in just judgements [sic]' must prevail over the defendant's 'valued right' to have his trial concluded before the first jury impaneled." *See Arizona,* 434 U.S. at 516, 98 S.Ct. at 835–36. For all of these reasons, we conclude that the trial court could have reasonably found that leaving juror fifteen on the jury would have rendered it impossible for the jury to arrive at a fair verdict, and therefore, compelling reasons existed for her excusal even though it resulted in a mistrial.

Summarized, we hold that under the facts of this case, the trial judge did not exceed his sound discretion in deciding that a manifest necessity existed to declare a mistrial. Accordingly, the State is not jeopardy-barred from retrying appellant and the trial court did not err in refusing habeas corpus relief. The judgment of the trial court is affirmed.