Clifton Randolph v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-00360-CR

     CLIFTON RANDOLPH,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2002-520-C
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      A jury found Clifton Randolph guilty of burglary of a habitation and family violence
assault and assessed punishment at twenty years and ten years in prison, respectively. These
convictions stem from an incident when Randolph entered the home of Barbie Smith uninvited
and attacked her during an argument, leaving her with scratches and a broken nose. He
presents five issues on appeal: (1) the trial court erred in allowing the State to offer evidence of
misdemeanor convictions in violation of Rules of Evidence 403 and 404(b); (2) the trial court
erred in failing to instruct and charge the jury regarding community supervision; (3), (4)
ineffective assistance of counsel based on his attorneys’ alleged acts and omissions relating to
community supervision; and (5) the trial court erred by failing to instruct the jury on the lesser
included offenses of aggravated assault and criminal trespass. We will affirm the judgment.
BACKGROUND
      On April 29, 2000, Randolph and Barbie Smith, who is Randolph’s former girlfriend and
the mother of his younger daughter, shared a meal with their daughter T. and Randolph’s
daughter S. from a previous marriage. Randolph had recently been released from prison and
was living at his mother’s house. According to Smith and others, Randolph had assaulted and
abused her during their nine-and-a-half month relationship, which, according to Smith, was
long over by that time. Nevertheless, Smith testified that she had attempted to reestablish a
relationship with Randolph for the benefit of her infant daughter, who was born while
Randolph was incarcerated. After their meal, Smith dropped Randolph and S. at his mother’s
house and promised to return later to watch a movie. Smith never returned. Instead, she
drove to her mother’s place of employment and told her that, based on his behavior that day,
she was afraid of Randolph. Smith agreed to stay with her mother, Marsha Bankston, until
they felt safe to return to Smith’s apartment.
      The next day, April 30, Smith and Bankston and T. went to Smith’s apartment so that she
could retrieve clothing and necessities for about a week. Smith entered the apartment alone,
while Bankston waited in the car with T., all the while on the lookout for Randolph. Smith
asked Bankston to honk the horn or telephone the police if she saw Randolph. Smith brought a
basket of clothing to her mother’s car, and returned to her apartment for more clothing and her
daughter’s health care information. According to Smith, when she walked in the second time,
she was jumped from behind by Randolph who began to strangle her while demanding to know
why she had not returned the night before. At some point, Smith grabbed a kitchen knife,
which Randolph wrestled away from her. Smith says that he threw her on the bed in her
bedroom and threatened her by brandishing a vacuum cleaner. She said that she ran to the
cordless telephone to call the police, and he yanked it out of her hand and hit her in the face
with it, breaking her nose. She also said that Randolph punched her and scratched her with his
ring.
      Randolph said that he entered the apartment between Smith’s first and second trip. 
Although he acknowledged that he did not live there, he claimed to have several possessions,
including a table and a VCR there. He told the jury that he let himself in through the partially-open front door, because he simply wanted to talk to Smith about why she had stood him up
the night before. He conceded that they fought, but he denied assaulting her. Randolph
contends that Smith pulled a knife on him, and he restrained her. He denied punching her with
his fist, but conceded that the ring he wore probably caused the scratches on her face. He
denied that her nose was broken. In response to a question on cross-examination about why he
left Barbie’s apartment that day, Randolph said:
. . . And second to that, about the family violence, I didn’t assault her. Yes,
from my ring restrain. As far as hitting her, I never did hit her. Never, never,
never did, never did. I mean she has scratches indeed.
 
      Both agree that during the altercation, Bankston came to the front door, clutching T. in her
arms, forced the door open, and pulled Smith out of the apartment. Randolph fled to his
sister’s apartment, in the same complex, muttering, “They are not going to get me this time.” 
Randolph was eventually arrested on a warrant in February 2001.
 

EXTRANEOUS OFFENSES
      In his first issue, Randolph complains that the admission of evidence regarding extraneous
misdemeanor offenses was improper because it violated Texas Rules of Evidence 403 and
404(b).


 Specifically, he complains about the admission of a photograph. On cross-examination, Randolph admitted to a family violence assault against Tasha Wood on or about
Christmas Eve 2001. When the State offered a photograph of Wood after the assault,
Randolph’s attorneys objected on the grounds that he had admitted to the offense and the
photograph was “nothing more than prejudicial.” The court overruled the objection, and the
prosecutor showed the picture to the jury. In light of the record and the pretrial hearing on the
admissibility of extraneous offense evidence under Rules 403 and 404(b), we construe this as
an objection under Rules 403 and 404(b). See Tex. R. App. P. 33.1(a)(1)(A) (specific grounds
were apparent from the context).
      Our standard of review for admission of evidence is abuse of discretion. Graff v. State, 65
S.W.3d 730, 739 (Tex. App.—Waco 2001, pet. ref’d). The applicable law for our Rule
404(b) and Rule 403 analyses is well-established, and we have reviewed the record in light of
these standards. See id. at 738–42. The State contends that the extraneous offense evidence
was offered to show intent, an issue that was hotly contested at trial. See Tex. R. Evid.
404(b). The State argued that Randolph intended to assault Smith when he entered her
apartment; Randolph testified that he wanted only to talk to her. But in this case, the State had
other evidence of his intent, specifically his testimony that he had been convicted twice of
assaulting Smith and once of assaulting Wood; the probative value of the photograph was not
particularly compelling in light of his admission to the offense; and a limiting instruction
would likely not have been effective because of the indelible impression photographic evidence
of this nature leaves. See Graff, 65 S.W.3d at 740. Therefore, we conclude that the trial
judge abused his discretion in admitting the photograph. See id.
      But this error was not harmful. See id. Not only did Randolph testify during guilt-innocence, admitting to several prior assaults, other witnesses also testified about Randolph’s
violent and abusive past. Smith, the only other witness to the instant offenses, told the jury
what happened inside the apartment that day. Her mother also testified to the events the day of
the assault. More important, each woman made several allusions to Randolph’s prior abuse of
Smith. And the defense did not object. Even Randolph’s mother testified that she had
counseled him about his abusive treatment of Smith, and the defense did not object. Finally,
although the State did mention this extraneous offense during its summation, it did not
specifically emphasize the photograph. Moreover, the court’s charge to the jury included a
limiting instruction regarding the permissible uses of the extraneous offense evidence. Because
(1) other evidence of Randolph’s guilt was substantial or overwhelming, (2) the State placed
little emphasis on Wood’s photograph, and (3) extraneous evidence reflecting poorly on
Randolph’s character was admitted properly or without objection, we find that the photograph
could not have had more than a slight influence on the verdict. See Tex. R. App. P. 44.2(b). 
We overrule this issue.
JURY INSTRUCTION ON COMMUNITY SUPERVISION
      In his second issue, Randolph avers that the court erred by not sua sponte declaring a
mistrial or ordering that an instruction and charge to the jury on community supervision be
submitted. Randolph argues on appeal that the court’s admonishment prior to the punishment
phase was improper and that the court sua sponte should have declared a mistrial. A trial
judge has a discretionary power to declare a mistrial sua sponte when there is a manifest
necessity for the act or the ends of public justice would otherwise be defeated. Torres v. State,
614 S.W.2d 436, 442 (Tex. Crim. App. 1981); see also Plunkett v. State, 883 S.W.2d 349,
355 (Tex. App.—Waco 1994, pet. ref’d). Here, we do not believe the court abused its
discretion by reiterating what appellant’s counsel had told him only moments earlier regarding
the necessity for Randolph’s testimony during the punishment phase. We overrule Randolph’s
second issue.
INEFFECTIVE ASSISTANCE OF COUNSEL
      In his third and fourth issues, Randolph contends that his attorneys rendered ineffective
assistance of counsel. His third issue complains that his attorneys failed to file a properly
notarized application for community supervision;


 his fourth complains that his attorneys
incorrectly advised him of his need to testify in the punishment phase to qualify for community
supervision.
      We use the two-pronged Strickland test when reviewing claims of ineffective assistance of
counsel. Carroll v. State, 56 S.W.3d 644, 649 (Tex. App.—Waco 2001, pet. ref’d). We have
reviewed the record and the totality of Randolph’s counsel’s representation to determine
whether his attorneys’ performance was deficient and if there is a reasonable probability that
the outcome of his trial would have been different but for such inadequate performance. See
id. Although his written application for community supervision was not sworn, before trial
and on the record, Randolph’s attorney had him swear to the fact that he has never before been
convicted of a felony. Even if this weren’t sufficient, however, nothing in the record reveals
trial counsel’s motivation, and it would be improper for us to speculate upon it. See Thompson
v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).
      What is in the record, however, are several examples of Randolph’s refusal to cooperate
with his trial counsel, both before and during trial. Also, the record affirmatively shows that
Randolph’s attorneys met with him prior to trial, made pre-trial motions and obtained rulings,
conducted a thoughtful voir dire, objected frequently, requested and obtained limiting
instructions, vigorously cross-examined witnesses, and put forth a plausible defense. See
Villareal v. State, 1999 WL 33757655, *2–3 (Tex. App.—Corpus Christi 1999, no pet.) (not
designated for publication). Finally, the record clearly shows that the jury assessed the
maximum punishment, twenty years’ imprisonment for burglary of a habitation and ten years’
imprisonment for family violence assault, for which Randolph would not have been entitled to
community supervision. See Tex. Code Crim. Proc. Ann. art. 42.12 § 4(e).
      Under the totality of the circumstances, Randolph has not shown his attorneys’
performance fell below an objective standard of reasonableness. We overrule his third and
fourth issues.
LESSER INCLUDED OFFENSES
      Finally, Randolph urges that the court erred by not sua sponte instructing the jury on the
lesser included offenses of aggravated assault and criminal trespass. A defendant may have
strategic reasons for not requesting an instruction on a lesser included offense. Collier v.
State, 999 S.W.2d 779 (Tex. Crim. App. 1999). “By not requesting instructions on lesser
included offenses, the accused hopes that the jury will acquit of the greater offense rather than
convict on what the accused views as arguably insufficient evidence. The accused is counting
on the jury to comply with the instructions that the State’s burden is to prove guilt beyond a
reasonable doubt.” Id. at 782. Moreover, Randolph did not request an instruction on lesser
included offenses or object to the lack thereof. Therefore, he has waived his complaint. 
Kinnamon v. State, 791 S.W.2d 84, 96 (Tex. Crim. App. 1990) overruled on other grounds by
Cook v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). We overrule this issue.
CONCLUSION
      Having overruled all of Randolph’s issues, we affirm the judgment.
 

                                                                   BILL VANCE
                                                                   Justice

Before Chief Justice Gray,
      Justice Vance, and 
      Justice Reyna
      (Chief Justice Gray concurring)
Judgment affirmed
Opinion delivered and filed May 12, 2004
Do not publish 

[CR25]